UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICTOR VOE, | Case No. 2:20-cv-05737-RER-AYS |
| Plaintiff, | |
| – against – | Oral Argument Requested |
| JOHN DOES 1–9, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Ellis George LLP
152 W. 57th Street, 28th Floor
New York, New York 10019
Telephone:  (212) 413-2600
Facsimile:  (212) 413-2629
Email: sfarrelly@ellisgeorge.com

*Of Counsel*:
Stephen P. Farrelly, Esq.

Caballero Law LLLC
P.O. Box 235052
Honolulu, Hawaiʻi 96823
Telephone:  (808) 600-4749
E-mail: mateo@caballero.law

Mateo Caballero, Esq.

2460393

## TABLE OF CONTENTS

<u>Page</u>

PRELIMINARY STATEMENT ..................................................................................................1

I.  FACTUAL AND PROCEDURAL BACKGROUND...........................................................3

    A.  Victor Voe Seeks Out Anonymous Online Sexual Encounter................................3

    B.  Voe Delays Filing Lawsuit and Delays Pursuing Discovery..................................4

    C.  The Yamamotos Have No Connection to New York ..............................................5

II.  LEGAL STANDARD............................................................................................................6

III.  ARGUMENT .......................................................................................................................7

    A.  The Amended Complaint is Time Barred. ..............................................................7

        1.  The CFAA, N.Y. Civil Rights Law, and IIED Claims Were Always Untimely. ....................................................................................8

        2.  The FAC Does Not Relate Back to the Filing of the Complaint. ..............10

            a.  No Relation Back Under 15(c)(1)(C) Because No Mistake in Identity and No Notice. ..........................................................10

            b.  CPLR 1024 Not Satisfied Because No Fair Description of Defendants and No Diligence by Plaintiff.................................12

    B.  This Court Lacks Personal Jurisdiction over Defendants. ....................................15

        1.  The Court Lacks Personal Jurisdiction over Defendants under New York's Long Arm Statute..........................................................................16

            a.  Defendants have not transacted any business within the State of New York. ...................................................................16

            b.  Defendants have never been physically present within the state. ...................................................................................17

            c.  Defendants do not regularly conduct business in the state or derive substantial revenue from interstate commerce...................18

            d.  Defendants do not own or use any real property within the state. ...................................................................................18

        2.  Defendants' Contacts Are Insufficient under the Due Process Clause.........................................................................................................19

            a.  There is no basis for general personal jurisdiction over Defendants. .......................................................................19

            b.  There is no basis for specific jurisdiction over Defendants either. ............................................................................20

    C.  The Fraud and IIED Claims Fail to State a Claim................................................20

        1.  The Fraud Claims Do Not Satisfy the Heightened Pleading Standard and Suffer from Group Pleading.................................................20

**TABLE OF CONTENTS**
**(continued)**

Page

2.   The Fraud Claim and the IIED Claim Run Afoul of Group Pleading.................................................................................................21

D.   Transfer or Further Amending the Complaint Would Be Futile and Prejudicial to the Yamamotos. ...................................................................22

1.   Transfer or amendment would be futile......................................................22

2.   Transfer or amendment would be greatly prejudicial to the Yamamotos. ..................................................................................................23

CONCLUSION.......................................................................................................................24

## TABLE OF AUTHORITIES

<b><u>Page(s)</u></b>

### <u>FEDERAL CASES</u>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................6

*Barrow v. Wethersfield Police Dep't*, 66 F.3d 466 (2d Cir. 1995), *modified*,
    74 F.3d 1366 (2d Cir. 1996)...................................................................................11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................6

*Bensusan Rest. Corp. v. King*, 126 F.3d 25 (2d Cir. 1997)....................................................17

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) ...........................................16, 19

*C.B.C. Wood Prods. Inc. v. LMD Integrated Logistics Servs. Inc.*, 455 F. Supp. 2d 218
    (E.D.N.Y. 2006)......................................................................................................6

*Cotto v. City of N.Y.*, 803 F. App'x 500 (2d Cir. 2020).........................................................14

*Emerald Asset Advisors, LLC v. Schaffer*, 895 F. Supp. 2d 418 (E.D.N.Y. 2012)...............17

*Fat Brands Inc. v. Ramjeet*, 75 F.4th 118 (2d Cir. 2023) ......................................................15

*Gelber v. Stryker Corp.*, 788 F. Supp. 2d 145 (S.D.N.Y. 2011)..............................................6

*Ghartey v. St. John's Queens Hosp.*, 869 F. 2d 160 (2d Cir. 1989) ........................................6

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011).............................19

*Henderson v. INS*, 157 F.3d 106 (2d Cir. 1998) ...................................................................17

*Hogan v. Fischer*, 738 F.3d 509 (2d Cir. 2013)......................................................12, 13, 14, 15

*In re Crazy Eddie Sec. Litig.*, 792 F. Supp. 197 (E.D.N.Y. 1992)........................................22

*Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998).......................................................6

*Joseph v. Bute*, No. 16-CV-2004 (PKC)(LB), 2019 WL 181302
    (E.D.N.Y. Jan. 9, 2019) .........................................................................................13

*Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101 (2d. Cir. 2023)...............................22

*Koral v. Saunders*, 36 F.4th 400 (2d Cir. 2022) ....................................................................9

*Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010) ........................................................11

*LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147 (E.D.N.Y. 2012).................6

*Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013)............................................15

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50 (2d Cir. 2012) ........................16

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015).......20, 21

*MacDermid, Inc. v. Deiter*, 702 F.3d 725 (2d Cir. 2012) ...........................................6, 23

*McCracken v. Verisma Sys.*, 91 F.4th 600 (2d Cir. 2024) ..............................................22

*Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964 (9th Cir. 1993) ................................23

*New York v. Mt. Tobacco Co.*, 55 F. Supp. 3d 301 (E.D.N.Y. 2014)..........................................21

*O'Neill v. Asat Tr. Reg. (In re Terrorist Attacks on September 11, 2001 (Asat Tr. Reg.))*, 714 F.3d 659 (2d Cir. 2013) ..........................................20

*Penguin Group (USA) Inc. v. Am. Buddha*, 609 F.3d 30 (2d Cir. 2010) ........................................6

*Rentas v. Ruffin*, 816 F.3d 214 (2d Cir. 2016) ........................................................7, 10

*Rodriguez v. City of New York*, No. 10 CIV. 1849 PKC, 2011 WL 4344057 (S.D.N.Y. Sept. 7, 2011) ...........................................12

*S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123 (2d Cir. 2010) ........................................6

*Schiavone v. Fortune*, 477 U.S. 21 (1986)................................................................12

*Sewell v. Bernardin*, 795 F.3d 337 (2d Cir. 2015)....................................................8, 11

*Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221 (2d Cir. 2014) ............................19

*Spetner v. Palestine Inv. Bank*, 70 F.4th 632 (2d Cir. 2023) ........................................17

*Uebler v. Boss Media, AB*, 363 F. Supp. 2d 499 (E.D.N.Y. 2005) ...............................18

*Walden v. Fiore*, 571 U.S. 277, 134 S. Ct. 1115 (2014)....................................................20

*Watt v. City of New York*, No. 1:22-cv-06841 (AMD) (JAM), 2024 U.S. Dist. LEXIS 122102 (E.D.N.Y. 2024)....................................13, 14

*Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001) ................................18

*Ying Li v. City of New York*, 246 F. Supp. 3d 578 (E.D.N.Y. 2017) ...........................21

**FEDERAL STATUTES**

18 U.S.C.S. § 1030(g)............................................................................................7

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

Computer Fraud and Abuse Act, 18 U.S.C. § 1030.................................................................7

## STATE STATUTES

Haw. Rev. Stat. §§ 657-1, et seq...............................................................................................23

N.Y. C.P.L.R. 213(8) ................................................................................................................8

N.Y. C.P.L.R. 215(3) ...........................................................................................................7, 10

N.Y. C.P.L.R. 302(a)(1) – (4) .......................................................................................16, 17, 18

N.Y. C.P.L.R. 1024..................................................................................12, 13, 14, 15, 23

N.Y. Civ. Rights Law § 52-b ..........................................................................................4, 8, 9

## RULES

Fed. R. Civ. P. 7 ........................................................................................................................1

Fed. R. Civ. P. 9(b) .......................................................................................................3, 8, 20, 21

Fed. R. Civ. P. 12(b)(2)..........................................................................................................1, 6

Fed. R. Civ. P. 12(b)(6)..........................................................................................................1, 6

Fed. R. Civ. P. 15(a) ...................................................................................................10, 11, 22

Fed. R. Civ. P. 15(c)(1)..........................................................................................................10-12, 14

## OTHER AUTHORITIES

Cole, *Chatroulette's Founder Has Spent 12 Years Trying to Solve the 'Penis Problem,'* Oct. 8, 2021: https://www.vice.com/en/article/chatroulette-moderation-penis-problems/ (last visited September 16, 2024)...........................................................1

Tidy, *Omegle: Children Expose Themselves on Video Chat Site,* Feb. 17, 2021: https://www.bbc.com/news/technology-56085499 (last accessed Sept. 18, 2024) ...................1

Tolentine, *Omegle, the anonymous video chat site, shuts down after 14 years*, Nov. 9, 2023: https://www.nbcnews.com/tech/social-media/omegle-shut-down-did-why-leif-k-brooks-shutdown-alternatives-rcna124393 (last visited July 17, 2024) ..........................1

Defendants Wayne Yamamoto ("Wayne") and Dylan Yamamoto ("Dylan," and collectively, "Defendants" or the "Yamamotos") submit this memorandum of law in support of their motion to dismiss Plaintiff Victor Voe's First Amended Complaint (the "FAC" [ECF No. 17]) pursuant to Fed. R. Civ. P. Rules 7 and 12(b)(2) and (6) with prejudice. Defendants move on the grounds that (1) all claims asserted in the FAC are barred by the applicable statutes of limitations because the allegations in the FAC do not relate back under applicable law; (2) even if all claims were not time barred, the Court lacks personal jurisdiction over the Yamamotos, who reside in Hawai'i and have no contacts with New York, and (3) the claims for intentional infliction of emotional distress ("IIED") and fraud fail to state a claim under the doctrine of group pleading and because the fraud claim is not pleaded with particularity.

## PRELIMINARY STATEMENT

At some point in 2015, Plaintiff Victor Voe sought out an online, web-cam-based sexual encounter with an anonymous interlocutor. Now he has filed a First Amended Complaint, suing a boy who was sixteen at the time and his father for some kind of participation in that encounter. The encounter began either on Omegle.com, a website that voluntarily shut down in 2023 after scores of complaints that it enabled adult sexual predators to assault minors,[1] or on Chatroulette.com, a site that has faced similar complaints.[2] These sites randomly pair two individuals for one-on-one video encounters, and users click "next" to match with a new stranger.

---

[1] "During just one two-hour period, we were connected at random with 12 masturbating men, eight naked males and seven porn adverts." Tidy, *Omegle: Children Expose Themselves on Video Chat Site*, Feb. 17, 2021: https://www.bbc.com/news/technology-56085499 (last accessed Sept. 18, 2024); "Not long after its launch, Omegle gained a reputation as a platform that struggled to stop child sexual abuse. Omegle has been named in numerous Department of Justice publications announcing the sentencing of people convicted of sex crimes. The website was sued in 2021 for allegedly having a 'defectively designed product' and enabling sex trafficking after the service matched a girl, then 11, with a man who later sexually abused her." Tolentine, *Omegle, the anonymous video chat site, shuts down after 14 years*, Nov. 9, 2023: https://www.nbcnews.com/tech/social-media/omegle-shut-down-did-why-leif-k-brooks-shutdown-alternatives-rcna124393 (last visited July 17, 2024);

[2] Cole, *Chatroulette's Founder Has Spent 12 Years Trying to Solve the 'Penis Problem,'* Oct. 8, 2021: https://www.vice.com/en/article/chatroulette-moderation-penis-problems/ (last visited September 16, 2024).

Victor Voe alleges that he visited these sites to meet anonymous strangers for "a modern form of safe sex" via web cam.  FAC ¶ 9.  See Ex 1 (FAC) to Declaration of Stephen P. Farrelly, submitted herewith.  Voe alleges that during one such encounter, his interlocutor promised to keep the encounter confidential, but that in fact the interlocutor recorded the encounter, placed a virus on Voe's computer, tried to extort him, and ultimately posted the images to several pornographic websites.

Voe's lawsuit must be dismissed for three reasons.  First, the lawsuit is objectively too late.  The fundamental legal shortcoming of the FAC is that none of the claims relate back to the original pleading, and they are time-barred on that basis alone.  Even if they did relate back, the claims in the original complaint were either time-barred when filed or fail to state a claim.  The encounter giving rise to this lawsuit took place nearly a decade ago, at some point in 2015.  At the end of that 2015 encounter, the interlocutor sent a chat message to Voe that his computer had been hacked, the sexual encounter had been recorded, and the video would be posted online.  The video and some images were then posted online in 2015.  Thus, the causes of action all accrued in 2015, five years before Voe filed suit in November 2020. Worse,  Voe did not name the Yamamotos until 2024, _nine years after the alleged encounter_.  No doctrine of relation-back can rescue this suit.  It is time-barred.

Second, the court lacks personal jurisdiction over the Yamamotos.  The Yamamotos have never been to New York or engaged in business or other persistent course of conduct within the state.  Voe does not allege otherwise.  Even if personal jurisdiction were proper under the long arm statute, exercising personal jurisdiction over the Yamamotos would violate due process, because Voe does not allege that the Yamamotos purposefully directed their activities at New York.  Instead, he concedes that this was a random, anonymous online encounter that he initiated by

logging into Omegle or Chatroulette, wherever their servers are, and then asking his interlocutor to meet him on Skype.

Third, the FAC fails to state a claim. The fraud and IIED claims indiscriminately lump together all the defendants, including the Yamamotos and seven other John Doe defendants. There are no individualized allegations as to Wayne or Dylan; they are lumped together in one paragraph. That is not allowed in New York. Moreover, the fraud claims fail to satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b).

No amendments to the FAC can fix these legal defects. Equally significant, however, the Yamamotos would be greatly prejudiced by a further amendment as they would not only be forced to continue defending themselves in a state with which they have no connection, but the events took place nine years ago and most of the evidence they could use to defend themselves is lost. Consequently, the Yamamotos request that the FAC be dismissed without leave to amend.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Victor Voe Seeks Out Anonymous Online Sexual Encounter

Voe, who proceeds anonymously, filed his initial complaint on November 24, 2020, against nine Doe defendants (Complaint ("Compl.") [ECF No. 1]), and amended it on January 31, 2024 (FAC [ECF No. 17]). Voe alleges that he variously visited two websites, Chatroulette and Omegle, for the purpose of engaging in anonymous, webcam-based sexual encounters. FAC ¶ 9. Voe claims that during one of those *many* encounters sometime in 2015, he asked an anonymous interlocutor to move the conversation to the messaging platform Skype. *Id.* ¶ 10. On Skype, Voe and his interlocutor had some kind of sexual encounter. *Id*. ¶ 12. Voe claims that they agreed the encounter would be anonymous, private, unrecorded, and unphotographed. *Id*. ¶ 11.

Voe does not allege that he confirmed the age or sex of his interlocutor, and he does not allege whether the encounter was voice-only, video-chat, or text-based. He does not allege

specifically what website the encounter began on, and he does not allege when the encounter took place beyond giving a year.  He does not allege what precisely was said or texted between the interlocutor and Voe.  The only detail he alleges is that he assumed his interlocutor was female. FAC ¶ 10

Voe alleges that at the end of the encounter, his interlocutor used the chat feature on Skype to inform him that the encounter had been recorded, that his computer had been hacked to discover his true identity, and to demand that Voe pay ransom. *Id.*  ¶ 14.  Voe refused, and instead shut down his computer and tried to delete any information that could be used to identify him.  *Id.* ¶ 16. Voe alleges that several images and videos of him were thereafter posted to pornographic websites "start[ing] in 2015" and ending in August 2020. *Id.* ¶ 17.  Voe alleges he first learned about the images and videos on August 2020. *Id.* ¶ 21.  Voe asserts claims for: (1) violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, (2) common law fraud, (3) intentional infliction of emotional distress ("IIED"), and (4) violations of New York Civil Rights Law, Ch 5, Sec. 52-b. *Id.* ¶¶ 20-46.

**B.    Voe Delays Filing Lawsuit and Delays Pursuing Discovery**

Voe has not been diligent in pursuing his claims.  He waited five years to file his complaint. After filing the complaint, Voe sought and obtained three orders granting third-party discovery on December 29, 2020, September 14, 2021, and February 15, 2022. ECF Nos. 7, 10, 12.  Then nothing happened.  No additional discovery was sought thereafter.

Without any movement in the eighteen months after the issuance of the third subpoena, on June 14, 2023, the Court issued an order noting the lack of activity since February 2022 and ordered a status report by June 21, 2023.  On June 21, 2023, Voe's prior counsel filed a letter stating that his firm was retiring from the practice of law and requested a 30-day period to retain new counsel or file a Notice of Voluntary Dismissal. ECF No. 13.  The next day, the Court granted

the request and ordered Voe to file either a notice of discontinuance or a status letter by July 31, 2023.  Voe did not comply with the Court's order and did not file either a status report or notice of discontinuance by July 31, 2023.  Indeed, nothing further was filed even after his new (and current) counsel entered an appearance on September 6, 2023.  ECF No. 14.

After another four months of silence, on December 20, 2023, noting Voe's failure to comply with its prior order, the Court once again ordered Voe to file a status report by January 3, 2024.  Voe then filed a status report explaining that through third party discovery he was able to identify two Doe defendants, who were father and son, and requested 60 additional days to serve the complaint, which the Court granted.  ECF Nos. 15, 16.

On January 31, 2024—three years after obtaining his first subpoena and two years after obtaining his third and final subpoena—Voe filed the FAC. ECF No. 17.  The FAC was identical to the original complaint except for two alterations: the FAC newly alleged that (i) Voe was able to identify the Yamamotos through information provided by third parties, FAC ¶ 5, and (ii) the Yamamotos had recorded Voe's video and images, attempted to extort him, and when he refused to pay, uploaded those videos and images to Pornhub and other websites.  FAC ¶ 20.  On February 14, 2024, Voe then had the Yamamotos served with the summons and FAC at their home in Hawaiʻi.  ECF Nos. 21, 22.

## C.    The Yamamotos Have No Connection to New York

The Yamamotos, who are Hawaiʻi residents, deny having any connections to the State of New York.  *See* Sept. 18, 2024 Declaration of Wayne Yamamoto ("Wayne Decl."), submitted herewith, ¶¶ 6-10; Declaration of Dylan Yamamoto ("Dylan Decl."), submitted herewith, ¶¶ 5-9.  They have never been or traveled to New York.  Dylan Decl. ¶ 5; Wayne Decl. ¶ 6.  They have never conducted business there.  Dylan Decl. ¶ 6; Wayne Decl. ¶ 7.  They do not own property or have any connections to the state.  Dylan Decl. ¶¶ 7-9; Wayne Decl. ¶¶ 8-10.

.

## II.   **LEGAL STANDARD**

"A statute of limitations defense, based exclusively on dates contained within the complaint or appended materials, may be properly asserted by a defendant in a 12(b)(6) motion." *Gelber v. Stryker Corp.*, 788 F. Supp. 2d 145, 153 (S.D.N.Y. 2011) (citing *Ghartey v. St. John's Queens Hosp.*, 869 F. 2d 160, 162 (2d Cir. 1989)).  To withstand a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"In a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of demonstrating that the Court has jurisdiction over the defendant." *C.B.C. Wood Prods. Inc. v. LMD Integrated Logistics Servs. Inc.*, 455 F. Supp. 2d 218, 222 (E.D.N.Y. 2006).  If the parties have not yet conducted discovery, the plaintiff may counter the motion to dismiss by making a *prima facie* showing of jurisdiction. *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998).  "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Penguin Group (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (cleaned up).  While evaluating the 12(b)(2) motion, the Court may consider the plaintiff's complaint, as well as affidavits and other supporting materials the parties present. *See S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010); *LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 152 (E.D.N.Y. 2012).  "The allegations

in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (citations omitted).

## III.    ARGUMENT

### A.    The Amended Complaint is Time Barred.

The FAC describes events that all took place in 2015, but Voe waited five years, until 2020, to file the original complaint against nine John Doe defendants and then he waited more than three more years to add the Yamamotos as named defendants . This is simply too late.

The FAC alleges that the Yamamotos (in concert with unnamed others) recorded Voe without his permission in 2015, and that they then uploaded a virus to his computer in order to hack it, and blackmailed him, *all in 2015*.  FAC ¶¶ 14, 17.  The FAC alleges that Plaintiff was informed, during his online encounter in 2015, that his computer had been hacked to discover his true identity, and that the recorded images would be posted online if he did not pay ransom.  *Id.* ¶ 14.  And the FAC alleges that the hackers made good on their threats: "start[ing] in 2015" videos of Victor Voe were posted to pornographic websites.  Those postings ran through 2020.

On November 24, 2020, five years after the harm was done and several months after the postings ceased, Plaintiff filed his complaint against nine anonymous Doe defendants.

The FAC, which for the first time named the Yamamotos as defendants, was not filed until January 31, 2024: *nine years* after the alleged incident and three-and-a-half years after Plaintiff allegedly discovered the video and images online.  FAC ¶ 21.  Consequently, the FAC was filed beyond the statute of limitations for:

1.    CFAA claims, which is <u>two years</u> from the date of discovery of a computer infiltration or hack, 18 U.S.C.S. § 1030(g);

2.     New York Civil Rights Law § 52-b claims, which is <u>one year</u> from when a plaintiff reasonably should have discovered the images, or <u>three years</u> from publication of the image, *id.* § 52-b(6); and

3.     IIED, which is <u>one year</u> from when conduct ceases, N.Y. C.P.L.R. 215(3), *Rentas v. Ruffin*, 816 F.3d 214, 226 (2d Cir. 2016).[3]

### 1.     <u>The CFAA, N.Y. Civil Rights Law, and IIED Claims Were Always Untimely.</u>

As the Court suggested during the pre-motion hearing on May 14, 2024, the Computer Fraud and Abuse Act ("CFAA") claim in this case was clearly time-barred when the original complaint was filed, as were the N.Y. Civil Rights Law claim and the IIED claim.  The original complaint was filed on November 24, 2020.  It alleged that Voe was promised that the 2015 encounter not be recorded, but at the end of the encounter he was told that (i) it had been recorded, (ii) his computer had been hacked, and (iii) his private information accessed.  Compl. ¶¶ 11, 14.  That complaint further alleged that the images were posted to the internet beginning in 2015, and that Voe was told the images would be posted.  Compl. ¶ 14, 17.  The complaint alleged that the images were later re-posted, but it does not allege which of the nine Doe defendants engaged in reposting (and importantly, the FAC only alleges that the Yamamotos engaged in the original 2015 posting, after Plaintiff "did not pay the amount being demanded" (FAC ¶ 20)).  Consequently, the limitations period started to run in 2015 for all claims—when Plaintiff was allegedly promised that the encounter would not be recorded, when he first discovered that his computer had been hacked and his personal information compromised, and when video was posted online.

---

[3] The statute of limitations for fraud is the greater of <u>two years</u> from discovery or <u>six years</u> from the fraud, which the FAC alleges took place in 2015, FAC ¶¶ 9, 32-34, N.Y. C.P.L.R. 213(8).  The fraud claim in the original complaint would therefore be timely, but it was not properly pleaded  It satisfies none of the heightened pleading requirements of Fed. R. Civ. P. 9(b).

As to the CFAA claim, the two-year statute begins to run when a plaintiff is aware that their computer has been infiltrated. *Sewell v. Bernardin*, 795 F.3d 337, 340 (2d Cir. 2015) ("The statute of limitations under the CFAA accordingly ran from the date that [plaintiff] discovered that someone had impaired the integrity of each of her relevant Internet accounts."). Here, Voe alleges that he was informed via chat feature that his computer had been hacked in order to discover his true identity. FAC ¶ 14. That is sufficient for the limitations period to begin running.

As to the New York Civil Rights Law, which penalizes both the publication of intimate images and the threat to publish such images (*see* N.Y. Civ. Rights Law § 52-b(1)), the statute is the longer of three years after the dissemination of the image (*see* N.Y. Civ. Rights Law § 52-b(6)(a)), or one year from the date a person discovered or reasonably should have discovered the dissemination of the image (i.e. 2016; *see* N.Y. Civ. Rights Law § 52-b(6)(b)). Under the first prong, the limitations period expired in 2018, since the images were disseminated in 2015 and there is no allegation that the Yamamotos re-posted the images. Under the second, inquiry notice prong, the standard is objective: it begins to run when a plaintiff "reasonably should have discovered" the publication (N.Y. Civ. Rights Law § 52-b(6)(b)). Consequently, the statute begins to run when a plaintiff is aware of facts that would cause a reasonable person to conduct an inquiry, even if the plaintiff is ignorant of the actual publication. *Koral v. Saunders*, 36 F.4th 400, 408 (2d Cir. 2022) ("The inquiry as to whether a plaintiff could, with reasonable diligence, have discovered the fraud turns on whether the plaintiff was possessed of knowledge of facts from which the fraud could be reasonably inferred." (cleaned up)).

Here, the original complaint and the FAC both allege that Voe was explicitly threatened in 2015 that the video would be posted on-line if he did not pay ransom. FAC ¶ 14. He did not pay ransom. FAC ¶ 20. In light of his refusal to pay ransom and the explicit threat, which itself is

penalized by the Civil Rights Law, the limitations period would have expired in 2016 under the inquiry notice prong, one year after the 2015 encounter, because Voe was aware of facts that should have caused him to inquire. Had he looked for the video promptly, he could have initiated suit earlier.

As to the IIED claims, the one-year statute runs from when the conduct ceases. N.Y. C.P.L.R. 215(3), *Rentas v. Ruffin*, 816 F.3d 214, 226 (2d Cir. 2016). Here, it is the FAC that reveals why the original complaint was untimely. The original complaint alleged that the nine John Doe defendants all engaged in the alleged conduct together, and that the original recording was posted online in 2015 and then reposted again through 2020. ¶ 17. But the FAC distinguishes between the conduct of the Yamamotos, who allegedly uploaded the recording when Plaintiff refused to pay (FAC ¶ 20), and the "Defendants" as a group of nine, who continued posting the video through 2020 (FAC ¶ 17). In other words, the FAC concedes that the Yamamotos' conduct ceased in 2015, and that the reposting was done by other, unidentified John Does. For that reason, the limitations period for the IIED claims as to the Yamamotos expired some time in 2016, a year after they allegedly uploaded the images to the internet.

## 2.    The FAC Does Not Relate Back to the Filing of the Complaint.

Regardless of whether any of the original claims were timely, none of the claims in the FAC are timely because none of them relate back to the original complaint. Only in two distinct situations, neither of which applies here, does Fed. R. Civ. P. 15 permit relation back as to newly-added defendants, such that claims against them are deemed to be timely.

### a.    No Relation Back Under 15(c)(1)(C) Because No Mistake in Identity and No Notice

Fed. R. Civ. P. 15(c)(1)(C) permits relation back provided that two conditions are satisfied: (i) that the newly-added defendants had sufficient notice of the original lawsuit such that they will

not be prejudiced by late addition (Fed. R. Civ. P. 15(c)(1)(C)(i)), and (ii) that the newly-added defendants knew or should have known the action would be brought against them, but for a mistake in identity (Fed. R. Civ. P. 15(c)(1)(C)(ii)).  Neither of these conditions is met here.

As to the second requirement, the Second Circuit is unambiguous: ignorance of the identity of a defendant and the deliberate choice to name a John Doe defendant does not qualify as a "mistake in identity" mentioned in the rule.  Under Fed. R. Civ. P. 15(c)(1)(C)(ii), simply replacing John Doe defendants with actual names is insufficient for relation back.  *Sewell*, 795 F.3d at 342 ("if a plaintiff cannot discover the hacker's identity within two years of the date she discovers the damage or violation, her claims under the CFAA . . . will be untimely. . . . This is because we have concluded that Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities." (internal citation omitted)); *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 549 (2010) ("We agree that making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity.").

The holding in *Sewell* is not limited to CFAA claims.  The same analysis applies to all four of Plaintiff's claims.  Plaintiff did not make a "mistake" in identifying the John Doe defendants. He simply did not know the true identities of the proper defendants.  Replacing Doe defendants with the names of real people does "not correct a mistake in the original complaint, but instead supplie[s] information Plaintiff lacked at the outset.  Since the new names were added not to correct a mistake but to correct a lack of knowledge, the requirements of Rule 15(c) for relation back are not met." *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995), *modified,* 74 F.3d 1366 (2d Cir. 1996).

Even if Plaintiff could satisfy the "mistake" prong, he cannot satisfy the "notice" prong under Fed. R. Civ. P. 15(c)(1)(C)(i).  Simply put, the Yamamotos did not have the required notice. "The linchpin of Rule 15(c)(1) is notice, and notice within the limitations period. . . . Rule 15(c)(1)(C)(i) . . . ., requires that plaintiff demonstrate that [defendants] received notice of the suit within the period provided by Rule 4(m) so that they will not be prejudiced in defending the action on the merits." *Rodriguez v. City of New York*, No. 10 CIV. 1849 PKC, 2011 WL 4344057, at *7 (S.D.N.Y. Sept. 7, 2011) (citing *Schiavone v. Fortune,* 477 U.S. 21, 31 (1986)).  That did not happen here.  The Yamamotos did not have actual notice, as they were not served with this lawsuit when it was filed and three is no evidence or even credible allegation that they were otherwise aware of it.  Wayne Decl. ¶ 11; Dylan Decl. ¶ 10.  Moreover, they could not have had constructive notice because there is nothing in the original complaint that would apprise them that they were the targets.  The complaint does not specify a date on which the encounter took place, it does not specify the website on which the encounter began, and it does not specify what was said or what occurred during the encounter  A lawsuit alleging that an anonymous Plaintiff had a sexual encounter that began somewhere on the internet and concluded on Skype some time in 2015, but that does not allege what was said, what happened, who did what, or even in the vaguest, most discreet terms inform the reader the general nature of the encounter, is insufficient for constructive notice.  Consequently, the notice requirement is not satisfied.

### b.  CPLR 1024 Not Satisfied Because No Fair Description of Defendants and No Diligence by Plaintiff

Plaintiff cannot rescue his four causes of action by appeal to Rule 15(c)(1)(A) and incorporation of N.Y. C.P.L.R. 1024.  Rule 15(c)(1)(A) permits an amended pleading to relate back when "the law that provides the applicable statute of limitations allows relation back." *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) (citing Rule 15(c)(1)(A)).  Thus, for New York causes

of action, or for federal statutes that derive their limitations period from analogous state law, "federal courts in New York may find that relation back is permitted under NYCPLR § 1024." *Joseph v. Bute*, No. 16-CV-2004 (PKC)(LB), 2019 WL 181302, at *4 (E.D.N.Y. Jan. 9, 2019) (citing Adv. Comm. notes).

"Courts in New York have interpreted [N.Y. C.P.L.R. 1024] to permit John Doe substitutions *nunc pro tunc,*" but in order for this section to apply, two "threshold requirements" must be met. *Joseph*, 2019 WL 181302 at *5 (*citing Hogan*, 738 F.3d at 518-19): "First, the party must exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name. Second, the party must describe the John Doe party in such form as will fairly apprise the party that [he] is the intended defendant." *Id.*

Plaintiffs were not diligent in pursuing discovery, and the complaint does not describe the John Doe party sufficiently to fairly apprise the Yamamotos that they are the intended defendants.

Concerning the first requirement, "New York courts stress that *any* failure to exercise due diligence to ascertain the John Doe's name subjects the complaint to dismissal as to that party." *Watt v. City of New York*, No. 1:22-cv-06841 (AMD) (JAM), 2024 U.S. Dist. LEXIS 122102, *24-25 (E.D.N.Y. 2024) (emphasis added). Here, Voe not only waited over five years to file a lawsuit in order to begin seeking discovery, but once he did, he waited three years from issuance of the first subpoena and nearly two years after obtaining his last third-party subpoena before amending and serving the FAC on the Yamamotos, even though Voe admits that he was able to identify the Yamamotos through the information received in response to the subpoenas. ECF Nos. 8, 17-19; FAC ¶ 20.

Instead of explaining to the Court the cause of his delay when the Court requested a status report, he failed to timely file a status report as ordered. Indeed, only six months after the Court-

ordered deadline did he belatedly file his report, and only under threat of dismissal. ECF Nos. 13-15. Such a long delay and lack of diligence are sufficient to hold that Voe did not exercise the requisite due diligence for relation back under N.Y. C.P.L.R. 1024. *Watt*, 2024 U.S. Dist. LEXIS 122102, at *26-27 (holding that an eight month delay in amending complaint after obtaining information sufficient to identify defendants constituted undue delay under CPLR 1024).

As to the second requirement, the Second Circuit has required either actual or constructive knowledge that a complaint has been filed against the initially unidentified defendant. *Cotto v. City of N.Y.*, 803 F. App'x 500, 503 (2d Cir. 2020) ("[T]here is no evidence in the record that [Defendant] had any knowledge that he was the 'John Doe' officer indicated in [the] initial complaint or that he knew or should have known that the lawsuit should have been brought against him . . . . Because [Plaintiff] has not shown that [Defendant] knew or should have known about the lawsuit and that he was the intended defendant, she cannot use Fed. R. Civ. P. 15(c)(1)(A), through CPLR 1024, to render her complaint timely as against [Defendant]."). Here, as discussed above, neither the Complaint nor the FAC plausibly alleged that the Yamamotos had such knowledge.

Plaintiff cannot rely on a misreading of *Hogan* to rescue his claims. *Hogan* involved a prisoner who was assaulted by prison guards. The prisoner subsequently sued under Section 1983. Because he did not know the names of the prison guards who assaulted him, he described their "appearance in substantial detail." *Hogan*, 738 F.3d at 519. In *Hogan*, the Second Circuit explained that relation back is only permissible when the John Does are fairly apprised and on notice that they are the intended defendant. It then held that that requirement had been met under the facts of the case. The circuit court reasoned that the "detailed description" of the appearance of the guards was sufficient to place them on notice. *Id.*

Here, by contrast, the original complaint is silent as to any detail about the encounter. The complaint refuses to specify the website where the encounter began, it refuses to specify what was said or texted during the encounter, or what either party did. It does not specify if the interlocutor's camera or microphone were on. It does not specify how long the encounter lasted. The complaint even refuses to specify a date on which the encounter occurred, merely limiting it to some time in 2015. All we know is that some portion of the encounter occurred on Skype, and that at the end, the interlocutor texted some kind of threat. Compl. ¶¶ 10-13; FAC ¶¶ 11-14. As to the interlocutor, the complaint only alleges that the plaintiff assumed his interlocutor was a woman. (Compl. ¶ 9; FAC ¶ 10). No further descriptions are offered about the interlocutor, Voe, or the encounter. In other words, the Complaint described a generic sexual encounter between Voe and his interlocutor some time in 2015 followed by an attempt at extortion without any detail as to what was said (no amount demanded, no currency, no means of transfer, nothing), when it was said, or who said it. The FAC thus stands in stark contrast to the "detailed description" of the officers in *Hogan*, the details of which were sufficient to place the officers on notice. Under such circumstances, the Yamamotos could not have been on notice that they specifically were the intended defendants and therefore, none of the claims relate back under CPLR 1024 either.

## B. This Court Lacks Personal Jurisdiction over Defendants.

Determining personal jurisdiction over an out-of-state defendant requires a two-step inquiry. First, the court must look to the law of the forum state to determine whether personal jurisdiction will lie. *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013). Second, the court must consider whether its exercise of personal jurisdiction over a foreign defendant comports with due process. *Id.*; *see also Fat Brands Inc. v. Ramjeet*, 75 F.4th 118, 125 (2d Cir. 2023) (applying same standard in diversity cases). Here, exercising personal jurisdiction over the Yamamotos is contrary to both New York law and the U.S. Constitution.

1.      **The Court Lacks Personal Jurisdiction over Defendants under New York's Long Arm Statute.**

New York's Long Arm Statute provides four bases for jurisdiction over any non-domiciliary person: (1) transacting business within the state, (2) committing a tortious act within the state, (3) committing a tortious act without the state causing injury within the state if the person either (i) regularly does business within the state or (ii) "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce," or (4) owning, using, or possessing real property within the state.  N.Y. C.P.L.R. 302(a).   None of these bases confer personal jurisdiction to the Court over the Yamamotos, who are domiciled in Hawaiʻi and have never been to the State of New York.

a.      **Defendants have not transacted any business within the State of New York.**

N.Y. C.P.L.R. 302(a)(1) authorizes "personal jurisdiction over any non-domiciliary . . . , who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state."  This section does not confer jurisdiction to the court, because the FAC does not allege that Defendants have transacted any business or supplied any goods or services within the state.  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 250 (2d Cir. 2007) ("The posting of defamatory material on a website accessible in New York does not, without more, constitute transacting business in New York for the purposes of New York's long-arm statute." (cleaned up)).   "[I]n determining whether personal jurisdiction may be exercised under section 302(a)(1), a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012).   The first element requires "purposeful activity," meaning "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits

and protections of its laws." *Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 639 (2d Cir. 2023). As

for the second element, "[a] suit will be deemed to have arisen out of a party's activities in New

York if there is an articulable nexus, or a substantial relationship, between the claim asserted and

the actions that occurred in New York." *Henderson v. INS*, 157 F.3d 106, 123 (2d Cir. 1998).

Here, the FAC does not allege any business transaction, only an alleged failed attempt at

extortion—a tortious act—that did not result in any exchange of money, goods, or services.

Moreover, the encounter was a random, anonymous encounter and thus, there is no allegation that

Defendants purposefully directed their activities to New York or purposefully availed themselves

of the privilege of conducting activities within New York. Indeed, Voe navigated himself to

Omegle or Chatroulette, wherever their servers are, and sought out an encounter there. It just so

happened that Voe was in New York, but he could have been anywhere in the United States, or

indeed, the world. Consequently, the allegations in the FAC are simply insufficient to confer

jurisdiction to this Court under N.Y. C.P.L.R. 302(a)(1).

### b.  Defendants have never been physically present within the state.

N.Y. C.P.L.R. 302(a)(2) authorizes personal jurisdiction where a non-domiciliary

"commits a tortious act within the state." Under this section, the Second Circuit has required that

Defendants be physically present within the State of New York when they allegedly committed

the tortious conduct. *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 29 (2d Cir. 1997) (where tortious

acts were performed by persons physically present outside of New York, "[e]ven if [Plaintiff]

suffered injury in New York, that does not establish a tortious act in the state of New York within

the meaning of § 302(a)(2)."); *Emerald Asset Advisors, LLC v. Schaffer*, 895 F. Supp. 2d 418, 430

(E.D.N.Y. 2012) ("[P]ersonal jurisdiction arises under [C.P.L.R. 302(a)(2)] only pursuant to

actions taken while physically within New York State."). Here, the FAC does not allege that

Defendants have ever been to New York state. They have not. Wayne. Decl. ¶ 6; Dylan Decl. ¶ 5.

c.    **Defendants do not regularly conduct business in the state or derive substantial revenue from interstate commerce.**

N.Y. C.P.L.R. 302(a)(3) confers jurisdiction over a non-domiciliary tortfeasor who causes an injury within the state, when the non-domiciliary either "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state," or "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  Here, the FAC does not allege that the Yamamotos regularly solicit business in New York or derive substantial revenue from the state.  More importantly, they do not.  Wayne. Decl. ¶¶ 7-8; Dylan Decl. ¶¶ 6-7.

Additionally, "the situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff."  *Whitaker v. Am. Telecasting, Inc*., 261 F.3d 196, 209 (2d Cir. 2001).  Under this test, the injury occurred in Hawai'i or possibly wherever the servers of the various pornographic websites at issue have their servers, not in New York.  *Id*. at 201 ("The occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York."); *see also Uebler v. Boss Media*, AB, 363 F. Supp. 2d 499, 508 (E.D.N.Y. 2005) (declining to exercise jurisdiction where all of defendant's alleged conduct occurred outside of New York even though plaintiff's experience of such conduct occurred in New York).  Therefore, the situs of the injury is not New York and N.Y. C.P.L.R. 302(a)(3) does not confer jurisdiction to the court either.

d.    **Defendants do not own or use any real property within the state.**

N.Y. C.P.L.R. 302(a)(4) confers jurisdiction to this court where the defendant owns or uses real property within the state.  This subsection is also inapposite in that there are no allegations

that the Yamamotos own or use any real property within the State of New York. There is no reason to believe they do, and they do not. Wayne. Decl. ¶ 9; Dylan Decl. ¶ 8. Therefore, the Court also lacks jurisdiction over the Yamamotos under this last provision of New York's long arm statute.

## 2.        Defendants' Contacts Are Insufficient under the Due Process Clause.

Even if the New York Long Arm statute conferred a New York court with jurisdiction, which it does not, exercising personal jurisdiction over the Yamamotos would violate their due process rights. *Best Van Lines*, 490 F.3d at 242-243 ("The crucial question is whether the defendant has purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws such that the defendant should reasonably anticipate being haled into court there." (cleaned up)).

"There are two types of personal jurisdiction: specific and general." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014). Specific or conduct-linked jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum state and is therefore subject to the State's regulation." *Id.* (cleaned up). General jurisdiction exists over an individual in the state where they are domiciled. *Id.*

### a.        There is no basis for general personal jurisdiction over Defendants.

There is no basis for general personal jurisdiction over Defendants as they are not domiciled in New York. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."). Instead, they are domiciled in Hawaiʻi. Wayne. Decl. ¶ 3; Dylan Decl. ¶ 2. Voe does not and cannot maintain otherwise.

**b.    There is no basis for specific jurisdiction over Defendants either.**

There is also no specific jurisdiction over the Yamamotos.  "Specific personal jurisdiction properly exists where the defendant took intentional, and allegedly tortious, actions expressly aimed at the forum. . . . The fact that harm in the forum is foreseeable, however, is insufficient for the purpose of establishing specific personal jurisdiction over a defendant." *O'Neill v. Asat Tr. Reg.* (*In re Terrorist Attacks on September 11, 2001* (Asat Tr. Reg.)), 714 F.3d 659, 674 (2d Cir. 2013) (cleaned up).  Here, the allegations are that Plaintiff and his interlocutor met in an anonymous chatroom and only later learned that Plaintiff was from New York.  FAC ¶¶ 9-14.  Such allegations are inconsistent with actions being expressly aimed or directed at New York.  The mere fact that Plaintiff happened to be from New York state is insufficient basis to provide minimum contacts.  *Walden v. Fiore*, 571 U.S. 277, 291, 134 S. Ct. 1115, 1126 (2014) ("The proper focus of the 'minimum contacts' inquiry in intentional-tort cases is the relationship among the defendant, the forum, and the litigation.  And it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State.  In this case, the application of those principles is clear: Petitioner's relevant conduct occurred entirely in Georgia, and the mere fact that his conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction.").[4]

**C.    The Fraud and IIED Claims Fail to State a Claim**

**1.    The Fraud Claim Does Not Satisfy the Heightened Pleading Standard and Suffers from Group Pleading**

A plaintiff who brings a fraud claim "must satisfy the heightened pleading standard set forth in Rule 9(b)."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171

---

[4] If the Court is not inclined to dismiss the case on jurisdictional grounds at this stage, the Yamamotos would request that the Court bifurcate merits discovery from jurisdictional discovery so that the Yamamotos can move for summary judgment on jurisdictional grounds on an expedited basis.

(2d Cir. 2015).  As the Second Circuit has explained, the circumstances of the fraud must be pleaded with particularity: "the complaint must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Id*. Plaintiff has elected to avoid any of this detail in his complaint.  The encounter occurred some time in 2015.  It began on some unidentified website, and the alleged promise of confidentiality that supports the fraud claim was made either on one of the unidentified sites or on Skype.  Plaintiff identifies neither the speaker nor precisely what was said (or typed); it is mere indirect quotation attributed to all of the Doe defendants collectively.  All that is alleged is that Plaintiff understood his interlocutor's communication to be a promise that the encounter would be private, anonymous, unrecorded, and unphotographed.  FAC ¶ 11.  This is insufficient to satisfy the heightened pleading standard of Rule 9(b).

### 2.    The Fraud Claim and the IIED Claim Run Afoul of Group Pleading

"Pleadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim." *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 598 (E.D.N.Y. 2017); *see also New York v. Mt. Tobacco Co*., 55 F. Supp. 3d 301, 315 (E.D.N.Y. 2014) ("[T]he Court pauses to note that the amended complaint does not allege a single fact connecting [Defendant] to the alleged sale of unstamped cigarettes in New York, but rather asserts only conclusions about 'defendants.'  This type of group pleading is inadequate to state a claim." (cleaned up)).  Here, the Complaint not only does not allege who posted Plaintiff's images and videos, it does not make any allegations specific to any of the nine Doe defendants.  Instead, it makes conclusory allegations against all "Defendants."  Such group allegations are insufficient to state either a fraud claim or an IIED claim against either Dylan or Wayne.

The FAC refuses to allege that Wayne or Dylan or one of the John Does made any of the

alleged misrepresentations (which are in any event not alleged with particularity) to Plaintiff. Instead, they are alleged to have done this collectively. That is not permissible. The same is true of the IIED claims, and this has effects not only on the ability to state a claim, but on the timeliness of those claims. The FAC alleges that "Defendants" collectively posted the videos to the internet starting in 2015 and continued to do so through 2020. FAC ¶ 17. This is insufficient to state a claim against Wayne or Dylan, as any person can copy a video from one website and post it to another. There is no allegation that Wayne or Dylan engaged in reposting. Paragraph 20 of the FAC alleges that Wayne and Dylan collectively uploaded the video to various websites "when Plaintiff did not pay the amount being demanded." These uploads, which apparently occurred in 2015, are not ascribed to Wayne or Dylan individually, and there is no allegation that they were the ones who reposted the videos. Consequently, the IIED claim fails to state a claim because of group pleading.

### D.    Transfer or Further Amending the Complaint Would Be Futile and Prejudicial to the Yamamotos.

Since Voe already amended the complaint once as a matter of course, ECF No. 17, under Fed. R. Civ. P. Rule 15 (a)(1)(B), any further amendment to the complaint requires either consent of the Yamamotos—which they will not provide—or a motion to amend under Fed. R. Civ. P. Rule 15(a)(2), which Defendants oppose. Futility, undue delay, and undue prejudice to the opposing parties are sufficient reasons to deny leave to amend. *In re Crazy Eddie Sec. Litig*., 792 F. Supp. 197, 203-04 (E.D.N.Y. 1992); *McCracken v. Verisma Sys*., 91 F.4th 600, 609 (2d Cir. 2024) ("Motions to amend should generally be denied in instances of futility." (cleaned up)).

#### 1.    Transfer or amendment would be futile.

If Plaintiff were to amend the complaint, refile the complaint in Hawaiʻi, or attempt to transfer the case there, those actions would be time barred and cause further prejudice to the

Yamamotos. *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 111 (2d. Cir. 2023) (affirming denial of leave to amend, where "[s]uch an amendment would not cure the fact that [Plaintiff's] claims are time barred."). Transfer to Hawaiʻi would be futile as Hawaiʻi law would apply under the *Erie* doctrine. *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 967 (9th Cir. 1993) ("We distinguish between cases so transferred and those transferred under §§ 1404(a) or 1406(a) to cure a lack of personal jurisdiction in the transferor district. As to the latter, the law of the transferee district, including its choice-of-law rules, is applicable."). Hawaiʻi does not have an equivalent to N.Y. C.P.L.R. 1024 and the longest statute of limitations under Hawaiʻi law is six years. *See, e.g.*, Haw. Rev. Stat. §§ 657-1, et seq. (six years being the longest statute of limitations), 657-7 (two year statute of limitations for actions for the recovery of damages or injury to persons only extended for infancy, insanity, imprisonment, and fraudulent concealment). Consequently, transfer to or refiling in Hawaiʻi would be futile.

Similarly, this Court did not stay discovery and Plaintiff was given an opportunity to conduct jurisdictional discovery on the Yamamotos. ECF No. 31. Yet in over four months, Plaintiff has failed to do so. Amending the complaint to include conclusory jurisdictional statements would also be futile in light of the Yamamoto's uncontroverted declarations about their contacts to New York. *MacDermid, Inc. v. Deiter*, 702 F.3d at 727 (2d Cir. 2012) ("The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits."). Therefore, the Court should dismiss the case against the Yamamotos with prejudice.

### 2.    Transfer or amendment would be greatly prejudicial to the Yamamotos.

The Yamamotos have been *severely* prejudiced by Voe's nine-year delay in adding them to the case. Even though Voe was allegedly told at the time of the encounter that he had been

hacked and his video would be posted on-line if he did not pay, he sat on his hands for five years. Then he waited over three more years to add the Yamamotos to an untimely complaint. In that time, the Yamamotos could have gathered evidence, preserved their computers, or done other things to defend themselves against Voe's allegations. But much of the evidence no longer exists. Computers may not have been preserved. Access to nine-year-old Skype accounts may have been lost. Email accounts may have been deleted. Whatever evidence exists is stale. Voe's delay has severely prejudiced the Yamamotos' ability to defend this case. Under such circumstances, the Court should deny Voe leave to amend and dismiss the case against the Yamamotos with prejudice.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant the Motion and dismiss with prejudice the First Amended Complaint against them.

Dated: New York, New York
     September 20, 2024

          ELLIS GEORGE LLP

          By:   /s/ Stephen P. Farrelly
              Stephen P. Farrelly
          Carnegie Hall Tower
          152 West 57th Street, 28th Floor
          New York, New York 10019
          Telephone:  (212) 413-2600
          Facsimile:  (212) 413-2629
          sfarrelly@ellisgeorge.com

          -and-

          CABALLERO LAW
          Mateo Caballero (*pro hac vice*)
          693 Crockett Avenue
          Campbell, California 95008
          Telephone:  (808) 600-4749
          mateo@caballero.law
          *Attorneys for Defendants Wayne Yamamoto and Dylan Yamamoto*