Daniel S.  Szalkiewicz, Esq.
DANIEL SZALKIEWICZ & ASSOCIATES, P.C.
23 West 73rd Street, Suite 102
New York, New York 10023

Attorneys for the Plaintiff VICTOR VOE

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VICTOR VOE,<br><br>           Plaintiff,<br><br>      v.<br><br>JOHN DOES 1-9,<br><br>           Defendants. | Case No. 20-cv-5737 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AND IN SUPPORT OF HIS MOTION TO
FILE AN AMENDED COMPLAINT**

Table of Contents

FACTUAL AND PROCEDURAL BACKGROUND .................................................................. 6

ARGUMENT

I.     DEFENDANTS' MOTION MUST BE DENIED BECAUSE THE STATUTE OF
LIMITATIONS HAD NOT EXPIRED WHEN THE ACTION WAS COMMENCED .............. 9

II.    THE CLAIMS RELATE BACK TO THE ORIGINAL COMPLAINT PURSUANT TO
RULE 15(c)(1)(A) ................................................................................................................. 10

   A.   Plaintiff's Time to Serve Defendants Should Be Extended in the Interests of Justice ... 13

      1.   Statute of Limitations ................................................................................. 13

      2.   Plaintiff's Claims Against the Defendants Are Meritorious. .......................................... 14

      3.   Defendants Face No Prejudice Because They Were Placed on Notice on February 17,
      2022 ................................................................................................................. 15

      4.   Length of Delay in Service .................................................................................. 15

      5.   Length of Delay in Service .................................................................................. 16

      6.   The Complaint and Subsequent Notice Fairly Apprised the Yamamotos they were the
      Intended Defendants ................................................................................................ 17

III.   THE COURT HAS SPECIFIC JURISDICTION OVER DEFENDANTS ....................... 17

   A.   The "Transacting Business" Prong Under CPLR §302(a)(1) ......................................... 18

   B.   The "Arises From" Prong Under CPLR §302(a)(1) ...................................................... 20

   C.   There is Jurisdiction Pursuant to CPLR §302(a)(3) ...................................................... 20

IV.    THE EXERCISE OF PERSONAL JURISDICTION OVER DEFENDANTS
COMPORTS WITH DUE PROCESS ............................................................................................ 21

V.     PLAINTIFF HAS ASSERTED A CLAIM FOR IIED ...................................................... 23

VI.    THE COURT SHOULD GRANT PLAINTIFF'S MOTION TO AMEND THE
COMPLAINT ................................................................................................................................. 23

## TABLE OF AUTHORITIES

**Cases**

*Abreu v. City of N.Y.*, 2018 U.S. Dist. LEXIS 111938, at *12 (S.D.N.Y. July 5, 2018) ............. 11

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2nd Cir.2007) ................................... 18, 19

*Dacosta v. City of N.Y.*, 296 F. Supp. 3d 569, 584 (E.D.N.Y. 2017)............................ 12

*Deutsche Bank Secs., Inc. v. Mont. Bd. Of Invs.*, 7 N.Y.3d 65 (2006)................................ 17, 18, 19

*DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84-85 (2d Cir. 2001)........................................ 21

*Ehrenfeld v. Bon Mahfouz*, 9 N.Y.3d 501, 851 N.Y.S.2d 381 (2007) ............................ 18

*Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013)................................................. 10

*Idiakheua v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 20-CV-4169 (NGG) (SJB), 2022 U.S. Dist. LEXIS 190205, at *21 (E.D.N.Y. Oct. 17, 2022) ........................................... 10

*International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154 (1945) ......................... 21

*Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460 (1988)................................................ 17

*LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214, 713 N.Y.S.2d 304, 307, 735 N.E.2d 883, 886 (2000) ....................................................................................................... 21

*Landwehrle v. Bianchi,* 2022 NY Slip Op 50649(U), ¶ 6, 75 Misc. 3d 1223(A) (Sup. Ct. 2022) 14

*Leader v. Maroney, Ponzini & Spencer*, 97 N.Y.2d 95, 761 N.Y.S.2d 291 [2001]) ............. 12, 13

*Litwin v. Hammond Hanlon Camp, LLC*, 2019 NY Slip Op 51475(U), ¶ 3, 65 Misc. 3d 1202(A), 118 N.Y.S.3d 373 (Sup. Ct. 2019) .................................................................... 14

*MacDermid, Inv. v. Deither*, 702 F.3d 725 (2nd Cir. 2012) ........................................ 22

*McGowan v. Smith*, 52 N.Y.2d 268, 437 N.Y.S.2d 643 (1981) ..................................... 18

*McKee Elec. Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 283 N.Y.S.2d 34 (1967) ..................... 18

*P.F. v. Brown*, 2024 NY Slip Op 51356(U), ¶ 3 (Sup. Ct. September 27, 2024) ........................ 14

*Padilla v. Rumsfeld*, 352 F.3d 695 (2nd Cir. 2003) ................................................. 19

*Perrien v. City of N.Y.*, No. 21-CV-4443 (MKB), 2022 U.S. Dist. LEXIS 164027, at *12 (E.D.N.Y. Sep. 12, 2022)................................................................................. 11

*Ramirez v. Cty. of Nassau*, 345 F.R.D. 397, 403 (E.D.N.Y. 2024) ............................... 23

*Robles v. Cox & Co.*, 841 F. Supp. 2d 615, 630 (E.D.N.Y. 2012) ................................................ 10

*Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) .................................................... 23

*S.R. v. Oliveri*, 2022 NY Slip Op 50109(U), ¶ 3, 74 Misc. 3d 1213(A), 160 N.Y.S.3d 576 (Sup. Ct.) ................................................................................................................................................. 9

*Symmetra Pty Ltd v. Human Facets, LLC,* 2013 U.S. Dist. LEXIS 83428, at *8 (S.D.N.Y. June 13, 2013) .................................................................................................................................... 18, 20, 22

*US Bank Nat'l Ass'n v. Fink*, 2022 NY Slip Op 03924, ¶ 2, 206 A.D.3d 858, 860, 171 N.Y.S.3d 113, 116 (App. Div. 2nd Dept.)................................................................................................... 15

*Waterbury v. N.Y.C. Ballet, Inc.,* 2022 NY Slip Op 02890, ¶ 11, 205 A.D.3d 154, 170, 168 N.Y.S.3d 417, 430 (App. Div. 1st Dept. 2022) ............................................................................ 14

*Young v. Lugo*, No. 18-CV-4216 (JS)(JMW), 2023 U.S. Dist. LEXIS 50588, at *4 (E.D.N.Y. Mar. 23, 2023) ............................................................................................................................... 11

**Statutes**

*Civil Rights Law § 52-b(1)*................................................................................................................ 14

*CPLR § 302(a)(3)* .......................................................................................................................... 20

*CPLR § 306-b* .......................................................................................................................... 12, 13

Fed. R. Civ. P. 15(a)(2) ................................................................................................................... 23

*N.Y. Civ. Rights Law § 52-b* ............................................................................................................ 9

Rule 15(c)(1)(A) .............................................................................................................................. 10

Defendants Dylan and Wayne Yamamoto ("Defendants" or "Yamamotos") will have this Court believe that a 16-year-old boy orchestrated a 5-year campaign of harassment and sexual abuse toward Plaintiff and more than a dozen other men.  Furthering their harassment of Plaintiff, Defendants attempt to place the blame on him, portraying him as a perpetrator rather than victim by including inadmissible, incendiary allegations in their preliminary statement concerning websites the Yamamotos used to lure their victims: Omegle and Chatroulette.  In a desperate attempt to avoid liability, the father and son conspirators mislead the court as to allegations in the Complaint and the extent of their conduct to shirk liability on procedural grounds.  However, their Motion to Dismiss should be denied because the Complaint is timely and there is jurisdiction over Defendants based on their tortious conduct that reached into the jurisdiction of New York.

Initially, Plaintiff's cause of action for violations of nonconsensual pornography and intentional infliction of emotional distress are timely because they were brought within three years of publication of the video and within one year of the tortious conduct.  On July 14, 2018, the Yamamotos shared plaintiff's intimate video on Pornhub and continued to upload private social media pictures of Plaintiff to the same Pornhub account until May 27, 2020.  Plaintiff's Complaint was filed on November 24, 2020.  The Yamamotos were first made aware of this action on February 17, 2022, when Charter sent them a notice of the subpoenas issued pursuant to court order. *See* DE 12.

Second, the Yamamotos intentionally transacted business in New York by (1) accessing a New York State resident's computer (*see* First Amended Complaint "FAC" ¶4), (2) recording a New York resident engaged in a sexual act while conversing via chat with that person, (3) demanding money from a New York resident with the intent of having him transfer money from

5

New York, (4) continuously monitoring and removing images from a New York resident's social media accounts with the intention of sharing them on pornographic sites, (5) friending a New York resident on social media accounts using a fake account, and (6) removing a video of Plaintiff online which showed he went to a university in New York and interposing the intimate video next to it and then posting it online. While the Yamamotos may never have set foot in New York to commit their tortious acts, the facts demonstrate they should have expected to be haled into a New York Court.

Finally, the court should permit the Plaintiff to amend his Complaint to specifically detail Defendants' tortious conduct and remove several causes of action.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff brought this action after he was unwillingly stripped of his privacy by Defendants when they obtained remote access to his computer, captured recordings of him masturbating, threatened to disseminate the video if he did not pay their ransom, and then did actually disseminate the content when he refused. The term for this crime is called sextortion and Plaintiff can count himself among the lucky few who have been able to identify his once masked sextortionists.

On August 24, 2020, Plaintiff received a message on Instagram alerting him that an intimate video and his images were being shared on the website Pornhub. V.V. Declaration "Decl." 14. Plaintiff learned that a user on Pornhub, utilizing the screenname "JohnBlacki" had uploaded the video that was taken of him in 2015. Plaintiff also found another folder under the JohnBlacki account entitled "Straight guy from video[.]" The folder contained 49 images stolen from Plaintiff's private and public social media accounts, including his business account and an

6

account belonging to his partner.  The images were uploaded to the JohnBlacki Pornhub account between November 22, 2018 and May 27, 2020.

On November 24, 2020, Plaintiff initiated this action.  Still unaware of Defendants' identities, in December 2020, Plaintiff sought court permission to serve a subpoena on MG Freesites LTD, the entity owning and operating Pornhub.com. DE 7.  After the application was partially granted, on April 2, 2021, Plaintiff subpoenaed Pornhub for the full first and last name associated with the account and all physical addresses, if any, associated with the account.  DE 9.  In response, Pornhub provided three Excel spreadsheets, four separate pages of billing records, and thumbnails of the 49 images that were uploaded online by Defendants. V.V. Decl ¶16.

Two of the Excel spreadsheets related to the creation and updating of the album "Straight guy from video[.]"  They revealed Defendants created the album on November 22, 2018 and last updated the album on May 27, 2020, when eight (8) new images were uploaded. V.V. Decl. ¶17.  Most of the images came directly from Plaintiff's Instagram account: "@newyork[Voe]". V.V. Decl. 24.  One of the images shared by Defendants showed Plaintiff wearing his college jersey (which showed the name of his New York state college), standing on a sports field. V.V. Decl. 27.  Other images were removed from his partner's account and tag Plaintiff's Instagram account: "@newyork[Voe]".  *Id.*  Finally, several images had famous New York landmarks in the background, such as the Empire State Building and a New York City taxicab. *Id.*  The Excel spreadsheet also revealed that the May 27, 2020 images were uploaded from a CenturyLink Communications LLC IP address. V.V. Decl. 18.

The third Excel spreadsheet contained a list of videos uploaded by Defendants and session IPs.  Szalkiewicz Decl. Exhibit 1.  The overarching theme of the videos being disseminated by Defendants mirrored what had happened to Plaintiff: "straight guys" "tricked"

into performing sexual acts on camera. *Id.* Plaintiff's video was first uploaded by Defendants on July 14, 2018 and garnered 22,068 views. *Id.* All of the session IP addresses were associated with untraceable VPNs except for the IP address 76.173.22.142, assigned to Charter, that accessed the account on August 7, 2020. *Id.* One of the billing records contained the name Dylan Yamamoto. DE 9.

On May 12, 2021, Plaintiff requested the ability to serve a subpoena upon Charter to determine the subscriber to whom the IP address was assigned at the time of its use. DE 9. On September 14, 2021 the Court granted Plaintiff's application. DE 10. Charter was served with the subpoena on September 28, 2021, but because the company required a "so ordered" subpoena, Plaintiff was forced to make another application to the Court (DE 11) which was granted on February 15, 2022 (DE 12). On February 16, 2022, Charter sent Wayne Yamamoto notice of the subpoena and lawsuit via a FedEx overnight delivery. Szalkiewicz Declaration, Exhibit 2.

On March 11, 2022, Charter responded to the subpoena identifying Defendant Wayne Yamamoto as one of the parties whose IP address was used to access the Pornhub account which had posted Plaintiff's content. Szalkiewicz Declaration, Exhibit 3. After learning the true identities of his abusers, Plaintiff began to experience extreme fear of retribution. V.V. Decl. 42. Beginning in early 2023, Plaintiff's law firm informed him that they would be winding down their practice and he needed to find a new attorney to represent him. V.V. Decl. 45, DE 13. Finding the practice of explaining and re-explaining his victimization to attorney after attorney emotionally taxing, Plaintiff once again experienced increased anxiety and avoidance. V.V. Decl. 45. Beginning September 6, 2023, Daniel Szalkiewicz & Associates filed a notice of appearance (DE 14), filed an order to show cause to permit Plaintiff to proceed as Victor Voe

(DE 16), and ultimately filed the Amended Complaint (DE 17).

Despite being placed on notice of the lawsuit on February 17, 2022, Defendants did not appear in this action until March 4, 2024 and filed their Motion to Dismiss on September 20, 2024, almost 31 months after receiving the communication from Charter.

## ARGUMENT

I.    **DEFENDANTS' MOTION MUST BE DENIED BECAUSE THE STATUTE OF LIMITATIONS HAD NOT EXPIRED WHEN THE ACTION WAS COMMENCED**

Defendants attempt to conflate the date they first illegally recorded and attempted to extort Plaintiff with the date they disseminated his intimate video and began their infliction of emotional distress.  This is designed to create the appearance that Plaintiff waited five years to bring the instant action when, in fact, he filed the lawsuit mere months after being alerted to his video being placed online.  Plaintiff's case is timely both under New York and common law.

A claim under New York's nonconsensual pornography law must be commenced within three years after the dissemination of the intimate content, or one year from the date a person discovered or reasonably should have discovered the dissemination or publication of the intimate video.  *N.Y. Civ. Rights Law § 52-b*.  The Civil Rights law is not subject to the "single publication rule," and the statute starts anew each time the defendants republish the intimate content using new accounts. *See, e.g. S.R. v. Oliveri*, 2022 NY Slip Op 50109(U), ¶ 3, 74 Misc. 3d 1213(A), 160 N.Y.S.3d 576 (Sup. Ct.).  Here, Defendants first disseminated Plaintiff's video on July 14, 2018.  The action was commenced on November 24, 2020, slightly more than two years after the dissemination.

Defendants argue Plaintiff "reasonably should have known" they would post his video online once he refused to pay their ransom, and therefore the statute of limitations began to run

9

in 2015.  The language of Civil Rights Law § 52-b is clear; the time frame starts "from the date a person discovers, or reasonably should have discovered" the publication.  Defendants waited four years to put the images on Pornhub.  Obviously, Plaintiff could not have discovered videos which had not yet been uploaded.  And, because the statute begins from the date of discovery, not the date of the recording of the intimate content, the clock began running the moment Plaintiff viewed an Instagram message alerting him his intimate content was online.

Plaintiff's claim for intentional infliction of emotional distress ("IIED"), which is governed by a one-year statute of limitations, is also timely.  "When the alleged offense is part of an ongoing pattern of harassment, the continuing tort doctrine permits a plaintiff to rely on wrongful conduct occurring more than one year prior to commencement of the action, so long as the final actionable event occurred within one year of the suit."  *Robles v. Cox & Co.*, 841 F. Supp. 2d 615, 630 (E.D.N.Y. 2012)(internal quotations omitted).  Plaintiff has alleged a course of conduct engaged in by the Yamamotos dating back to 2015 which continued until May 27, 2020, the last time they stole images from Plaintiff's social media profile and uploaded them onto Pornhub.  On November 24, 2020, just months later, Plaintiff filed his Complaint.

## II.    THE CLAIMS RELATE BACK TO THE ORIGINAL COMPLAINT PURSUANT TO RULE 15(c)(1)(A)

Federal courts explicitly permit John Doe complaints to relate back to the original date of filing.  *See Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013).  Rule 15(c)(1)(A) permits an amended pleading to relate back when "the law that provides the applicable statute of limitations allows relation back." Rule 15(c)(1)(A).

Under New York Law, "where a complaint identifies John Doe defendants, N.Y. C.P.L.R. § 1024 provides the mechanism for relation back." *Idiakheua v. N.Y. State Dep't of*

*Corr. & Cmty. Supervision*, No. 20-CV-4169 (NGG) (SJB), 2022 U.S. Dist. LEXIS 190205, at

*21 (E.D.N.Y. Oct. 17, 2022).  Under C.P.L.R. § 1024 a plaintiff may commence a lawsuit

against John Doe defendants and toll the statute of limitations as to the unnamed defendants as

long as "the plaintiff (1) exercises due diligence, prior to the running of the statute of limitations,

to identify the defendant by name; and (2) describes the John Doe party in such form as will

fairly apprise the party that he is the intended defendant." *Perrien v. City of N.Y.*, No. 21-CV-

4443 (MKB), 2022 U.S. Dist. LEXIS 164027, at *12 (E.D.N.Y. Sep. 12, 2022)(internal citations

removed).  Courts in in the Second Circuit "typically find a lack of due diligence only where the

plaintiff failed to take 'any action beyond filing his original complaint' prior to the expiration of

the statute of limitations." *Abreu v. City of N.Y.*, 2018 U.S. Dist. LEXIS 111938, at *12

(S.D.N.Y. July 5, 2018).

It is undeniable that Plaintiff diligently attempted to identify the Yamamotos prior to the

expiration of the statute of limitations.  Within mere months of learning that his images and

videos had been placed online, Plaintiff commenced this proceeding.  Plaintiff immediately

requested and obtained this Court's permission to subpoena Pornhub for account information.

Plaintiff went as far as to serve a subpoena in Cyprus on Pornhub to ensure compliance.

Szalkiewicz Decl. Exhibit 4.  While there was a delay in obtaining responsive documents, that

cannot be attributed to Plaintiff.  Within a month of receiving the subpoena response, Plaintiff

once again sought the Court's permission to track the IP addresses associated with Pornhub

account.  Once granted, Plaintiff subpoenaed Charter.

Defendants conflate due diligence in Plaintiff ascertaining their identities with due

diligence in serving them with a copy of the pleadings.  While Plaintiff immediately acted to

learn their identities, there was a delay in service.  As discussed above, New York law,

particularly CPLR § 1024 in connection with CPLR § 306-b, requires that "the newly-named defendant must be served within 120 days of the filing of the complaint." *Young v. Lugo*, No. 18-CV-4216 (JS)(JMW), 2023 U.S. Dist. LEXIS 50588, at *4 (E.D.N.Y. Mar. 23, 2023). This 120-day service requirement may be extended "upon good cause shown or in the interest of justice." *Dacosta v. City of N.Y.*, 296 F. Supp. 3d 569, 584 (E.D.N.Y. 2017), *citing CPLR § 306-b*.

Plaintiff's additional time for service should be granted under the "interests of justice" or the "good cause shown" standards expressly provided for in CPLR § 306-b. Discussing extending the time period under CPLR § 306-b, the New York State Court of Appeals has held that the "statute empowers a court faced with the dismissal of a viable claim to consider any factor relevant to the exercise of its discretion." *Leader v. Maroney, Ponzini & Spencer*, 97 N.Y.2d 95, 761 N.Y.S.2d 291 [2001]). The *Leader* court found that "[n]o one factor is determinative - the calculus of the court's decision is dependent on the competing interests of the litigants and a clearly expressed desire by the Legislature that the interests of justice be served." *Id.*

The Court of Appeals noted also that the legislative history of CPLR 306-b provides "unequivocal[ly]" that the inspiration for the New York rule is its Federal counterpart, Rule 4(m) of the Federal Rules of Civil Procedure. *Id*. The *Leader* court further explained that Fed. R. Civ. P. 4(m) provides alternative grounds for a plaintiff seeking an extension of time to serve process. *Id*. "The rule explicitly mandates that 'if the plaintiff shows good cause for the failure, the court shall extend the time for service'... [and] [t]he rule also authorizes a second, unspecified discretionary basis for extension 'even if there is not good cause shown." *Id*. (Citations omitted). New York's equivalent of the discretionary basis for extension under Fed. R. Civ. P. 4(m) is the

"interest of justice test," which does not require a showing that counsel was reasonably diligent in attempting service. *Id*.

### A. Plaintiff's Time to Serve Defendants Should Be Extended in the Interests of Justice

New York courts are empowered to extend the time for service of the Summons and Complaint when doing so is in the interests of justice (CPLR § 306-b). The interest of justice standard is a separate, broader, and more flexible provision of the law. "The interest of justice standard requires a careful judicial analysis of the factual setting of the case and a balancing of the competing interests presented by the parties." *Leader*, supra. In determining whether to extend the time for service in the interests of justice, the factors to be considered include expiration of the statute of limitations, the meritorious nature of the cause of action, the length of delay in service, the promptness of a plaintiff's request for the extension of time, and prejudice to the defendant. *Id*.

Here, these factors overwhelmingly favor allowing Plaintiff's Complaint to proceed.

### 1. Statute of Limitations

Plaintiff learned about the video being shared on August 24, 2020 and, accordingly, had until August 24, 2021 to file the action. The Complaint was filed on November 24, 2020. Additionally, the last act constituting infliction of emotional distress took place on May 27, 2020 and, accordingly Plaintiff had until May 27, 2021 to initiate the action. Plaintiff initiated the action well within the applicable statutes of limitation. The initial difficulty in serving Defendants was not based on any of Plaintiff's conduct, but rather Defendants' decision to anonymously harass Plaintiff rather than do so using their true names.

**2. Plaintiff's Claims Against the Defendants Are Meritorious.**

As set forth in the Amended Complaint and Proposed Amended Complaint, Plaintiff has a meritorious cause of action for violations of Civil Rights Law 52-b and IIED.

A defendant violates New York's nonconsensual pornography law when they, "for the purpose of harassing, annoying or alarming" a victim, disseminates or publishes an intimate video or image. *Civil Rights Law § 52-b(1)*; *see also Landwehrle v. Bianchi,* 2022 NY Slip Op 50649(U), ¶ 6, 75 Misc. 3d 1223(A) (Sup. Ct. 2022). Here, the Complaint alleges that Defendants shared a video of Plaintiff online with the intent to harm him.

Plaintiff's claim against Defendants for IIED is equally meritorious. "A plaintiff must allege extreme and outrageous conduct, intent to cause (or disregard of a substantial probability of causing) severe emotional distress, and actual distress resulting from the defendant's conduct." *P.F. v. Brown*, 2024 NY Slip Op 51356(U), ¶ 3 (Sup. Ct. September 27, 2024). As noted in *P.F.*, New York Courts finds allegations of "revenge porn" fall under the ambit of IIED. *Id.*; *see also Waterbury v. N.Y.C. Ballet, Inc.,* 2022 NY Slip Op 02890, ¶ 11, 205 A.D.3d 154, 170, 168 N.Y.S.3d 417, 430 (App. Div. 1st Dept. 2022) (" the repeated recording and dissemination of intimate images of [Plaintiff], without her knowledge or consent — is extreme and outrageous"); *Litwin v. Hammond Hanlon Camp, LLC*, 2019 NY Slip Op 51475(U), ¶ 3, 65 Misc. 3d 1202(A), 118 N.Y.S.3d 373 (Sup. Ct. 2019). Defendants' extreme and outrageous conduct goes beyond mere dissemination of Plaintiff's intimate video. For over two years they actively monitored his social media pages as well as pages belonging to his loved ones and employer, stole those images and videos, and then placed them on a top pornographic website for public viewing. The

14

only reason Defendants engaged in this continued course of conduct was to have third parties identify and shame Plaintiff and to further the extortionate demands.

### 3. Defendants Face No Prejudice Because They Were Placed on Notice on February 17, 2022

Defendants were well aware of the lawsuit against them as early as 2022. They had access to the docket number and the subpoena that was served on Spectrum. In their moving papers, Defendants vaguely argue they are prejudice because they "could have gathered evidence, preserved computers, or done other things to defend themselves against Voe's allegations." After being made aware they faced a lawsuit, and being provided an opportunity to appear before this Court and file a motion to quash the subpoena, Defendants sat idly by hoping the matter would go away. During this time, they could have "gathered evidence, preserved computers, or done other things to defend themselves against Voe's allegations," but apparently, they chose not to do so.

Defendant also utilized anti-forensic techniques such as VPNs to mask their true IP addresses and cover their tracks. This conduct ensured Defendants destroyed critical evidence immediately after publishing the material, so it begs the question what actually would Defendants have saved. Defendants will not suffer and have not shown any additional prejudice had they been served in March 2022 compared to when they were served in April 2024.

### 4. Length of Delay in Service

Where the statute of limitations has expired, the matter should only be dismissed with an extreme lack of diligence. *See US Bank Nat'l Ass'n v. Fink*, 2022 NY Slip Op 03924, ¶ 2, 206

A.D.3d 858, 860, 171 N.Y.S.3d 113, 116 (App. Div. 2nd Dept.) (reversing a Supreme Court

order and finding that a delay of more than 7.5 years constituted extreme lack of diligence).

     In his declaration Plaintiff discusses his intense fear in serving the Defendants after their

years of torment and harassment.  The paralytic effect of Defendants' intentional conduct caused

a further delay in being able to finally confront his abusers.   This fear was not irrational, and a

product of the Defendants' intentional intrusion into every aspect of Plaintiff's life - silently

watching him through his social media profiles, stealing his images, and placing them on

pornographic sites.

**5. Length of Delay in Service.**

     Defendants' point D amplified why the interest of justice requires this case to proceed in

New York.  Defendants argue for transferring the Complaint to Hawaii for several reasons,

including "Hawaii does not have an equivalent to N.Y. C.P.L.R. 1024" nor does it recognize a

tort for the distribution of nonconsensual pornography – something which exists in most states

*and* at a federal level.  If the action is dismissed, after Defendants have been placed on notice of

it for two years, and face no tangible prejudice, they will never face justice for their years of

abuse.

     In sum, here, the interests of justice are best served by the Court granting the motion to

extend the time to serve the Summons and Complaint on Defendants because: (1) the Action was

within the applicable statute of limitations; (2) Plaintiff's claims against Defendants are

meritorious; (3) Defendants cannot demonstrate any prejudice attributable to the delay in service;

and (4) there is a well-settled policy preference for determination of disputes on the merits rather

than procedurally.

**6.    The Complaint and Subsequent Notice Fairly Apprised the Yamamotos they were the Intended Defendants**

The initial Complaint identified the Defendants as "persons unknown to Plaintiff who, working individually or collectively, engaged in a scheme to fraudulently obtain and gain unauthorized access to Plaintiff's computer and personal images and later post such images on pornographic websites without Plaintiff's consent." DE 1 ¶4.  The Complaint further alleges that during a Skype conversation, the Defendants "sent Plaintiff a link to a website that was unknown to Plaintiff." DE 1 ¶11.   The complaint goes into detail how the Defendants communicated with Plaintiff and demanded a ransom. DE 1 ¶15.  The Defendants were also the ones who "obtained additional private images from Plaintiff's social media profiles, including Facebook and Instagram, and posted them to the "Gay" forum on the pornographic websites."  DE 1 ¶16.

Defendants, when they received notice of the subpoena, were apprised they were the ones who engaged in the conduct against Plaintiff.  The letter further informed Defendants that they had the ability to appear and contest disclosure of their information.  Defendants were advised their information was being disclosed pursuant to a legal matter; they had an opportunity to consult with an attorney to contest disclosure and may, in fact, have done so.

**III.    THE COURT HAS SPECIFIC JURISDICTION OVER DEFENDANTS**

The Court should find that jurisdiction is proper over the Yamamotos pursuant to New York's "long arm" statute, CPLR §302.

The Court of Appeals has set forth the standard for applying long-arm jurisdiction to an out of state defendant transacting business in New York.  To wit:

> New York's long-arm statute provides that "a court may exercise personal jurisdiction over any non-domiciliary…who in person or through an

agent…transacts any business within the state or contracts anywhere to supply goods or services in the state" (CPLR 302(a)(1).    By this "'single act statute'…proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, <u>so long as the defendant's activities here were **_purposeful_** and there is a **_substantial relationship_**</u> between the transaction and the claim asserted [emphasis added].

*Deutsche Bank Secs., Inc. v. Mont. Bd. Of Invs.*, 7 N.Y.3d 65 (2006) [*quoting Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460 (1988)].

The analysis under CPLR §302(a)(1) is twofold in that the Court must decide: (a) whether "the non-domiciliary conducts **purposeful activities** within the State (the "Transacting Business" prong); and, if so, (b) whether there  is an **articulable nexus** or **substantial relationship** between the **purposeful activities** that occurred in New York and the cause of action against the non-domiciliary (the "Arises From" prong).  *See Deutsche Bank Secs., Inc. v. Mont. Bd. Of Invs.*, *supra*; *Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2nd Cir.2007).

**A.  The "Transacting Business" Prong Under CPLR §302(a)(1)**

To demonstrate that a non-domiciliary is "transacting business" within the meaning of CPLR §302(a)(1), "there must have been some 'purposeful activities' within the State that would justify bringing the nondomiciliary defendant before the New York courts."  *McGowan v. Smith*, 52 N.Y.2d 268, 437 N.Y.S.2d 643 (1981).  Put another way, if the non-domiciliary has "**purposefully availed**" himself or herself of the privilege of conducting activities within New York, such that he or she should reasonably expect to defend his or her actions here, then such non-domiciliary has "transacted business" within the meaning of CPLR §302(a)(1).  *See Symmetra Pty Ltd v. Human Facets, LLC,* 2013 U.S. Dist. LEXIS 83428, at *8 (S.D.N.Y. June 13, 2013); *Ehrenfeld v. Bon Mahfouz*, 9 N.Y.3d 501, 851 N.Y.S.2d 381 (2007); *Deutsche Bank Secs., Inc. v. Mont. Bd. Of Invs.*, 7 N.Y.3d 65 (2006); *Best Van Lines, Inc. v. Walker*, *supra*; *McKee Elec. Co. v. Rauland–Borg*

*Corp.*, 20 N.Y.2d 377, 283 N.Y.S.2d 34 (1967).  Again, §302 is a single-act statute requiring but one transaction to confer jurisdiction in New York, although "when an individual act will not suffice, an ongoing course of conduct or relationship in the state may." *Symmetra Pty Ltd.*, *supra*.

Notably, to satisfy this prong, the **purposeful activities** within New York that would justify bringing the non-domiciliary defendant before the New York courts **need not be commercial in nature**. *Best Van Lines*, *supra* at 247, n. 10; *Padilla v. Rumsfeld*, 352 F.3d 695 (2ⁿᵈ Cir. 2003).  As stated by the Second Circuit:

> Section 302(a)(1)'s "transact[ing] business" language **does not require that the business in question be commercial in nature**. In *Padilla v. Rumsfeld* we noted that the purpose of section 302(a)(1) "was to extend the jurisdiction of New York courts over nonresidents who have engaged in some purposeful activity here in connection with the matter in suit" and that "the statute's jurisprudential gloss and its legislative history suggest that its 'transacts business' clause is not restricted to commercial activity." We noted there that "transacting business" under Section 302(a)(1) has been held to include: engaging in active bidding on an open phone line from California…; the conducting of proceedings and disciplinary hearings on membership by a private organization…; the execution of a separation agreement…; the making of a retainer for legal services…; the entry into New York by non-domiciliary defendants to attend a meeting,…; and the conducting of audits….[citations omitted].
>
> *Padilla*, *supra* at 709, n. 19.

The relationship between Plaintiff and Defendants began when the Yamamotos engaged in an online conversation with Plaintiff, a New York resident, recorded the interaction, and then demanded money from Plaintiff. Courts have "in the past recognized CPLR 302 (a) (1) long-arm jurisdiction over commercial actors and investors using electronic and telephonic means to project themselves into New York to conduct business transactions." *Deutsche Bank Sec., Inc., supra*.

Reviewing the Pornhub documents (Szalkiewicz Decl. Exhibit 1), the Yamamotos were running a sophisticated scheme of tricking unsuspecting victims into being recorded online.  The bulk of the videos uploaded by Defendants detail how they "trick" "straight" men and then publish

19

the unlawful content online. It is improbable that Voe is the only victim from whom Defendants demanded money. The Defendants utilized electronic means to insert themselves into New York and attempted to engage in a financial transaction with Plaintiff. That one instance is sufficient to establish jurisdiction.

### B. The "Arises From" Prong Under CPLR §302(a)(1)

To satisfy the "arises from" prong under New York's long-arm statute, there must be a "substantial nexus" between the out of state defendant's transaction in New York and the claim alleged. "In order to meet this requirement, there must be a 'relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim…". *Symmetra Pty Ltd.*, *supra*.

Here, and as summarized further below, the transactions of business – to wit, the recording the subsequent threat to disseminate the video, led to the current action.

### C. There is Jurisdiction Pursuant to CPLR §302(a)(3)

CPLR § 302(a)(3), which focuses on out-of-state torts, provides that courts have personal jurisdiction over an out-of-state defendant who

> commits a tortious act without the state causing injury to person or property within the state, ... if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.
> *CPLR § 302(a)(3)*

While Defendants allege they do not regularly conduct business in New York, they should have expected their acts to have consequences in New York and their extortion scheme derives substantial revenue from interstate or international commerce. The Court looks at five

elements to determine whether jurisdiction is met under CPLR § 302(a)(3)(ii):

> First, that defendant committed a tortious act outside the State; second, that the cause of action arises from that act; third, that the act caused injury to a person or property within the State; fourth, that defendant expected or should reasonably have expected the act to have consequences in the State; and fifth, that defendant derived substantial revenue from interstate or international commerce.
> *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214, 713 N.Y.S.2d 304, 307, 735 N.E.2d 883, 886 (2000)

Defendants do not contest that Plaintiff is able to satisfy the first four prongs of the test; rather they argue that they did not derive substantial revenue from interstate commerce and that the "situs of the injury" took place in either Hawaii or anonymous computer services. Initially, Defendants should have expected to derive substantial revenue by demanding money from men in exchange for not publicly humiliating them by uploading their videos online. According to the Federal Bureau of Investigation, in 2020 reported victims of sextortion, the scheme the Yamamoto's first engaged in to start their harassment of Plaintiff, earned scammers over $70,935,939[1]. Indeed, there is little reason to engage in such a heinous crime other than for the purpose of making money. Absent from the Yamamotos' affidavit is the assertion that they did not engage in this conduct to make money from victims such as Plaintiff.

Defendants' also misapply the situs of the injury test. The "original event" occurs "where the first effect of the tort . . . that ultimately produced the final economic injury" is located. *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84-85 (2d Cir. 2001). There can be no doubt that the first effect of the tort was in New York, where Plaintiff was a citizen.

## IV.    THE EXERCISE OF PERSONAL JURISDICTION OVER DEFENDANTS COMPORTS WITH DUE PROCESS

The Supreme Court of the United States set forth the requirements of due process

---

[1] https://therecord.media/fbi-cybercrime-losses-exceeded-4-2-billion-in-2020

*International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154 (1945) – a defendant "not present within the territory of the forum" must have "certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."

The basic analysis for due process here is the application of a "minimum contacts" test and a "reasonableness inquiry." <u>First</u>, to satisfy the minimum contacts test, "the plaintiff must demonstrate that the defendant purposely availed itself of the privilege of doing business in the forum and could foresee being haled into court there and that the claim arises out of, or relates to, the defendant's contacts with the forum [citations and quotations omitted]." *Symmetra Pty Ltd.*, *supra*. Provided this first test is satisfied, the "defendant may only defeat jurisdiction by presenting a compelling case that the presence of some other considerations would render jurisdiction unreasonable [citations and quotations omitted]." *Symmetra Pty Ltd. v. Human Facets, LLC*, *supra*.[2]

Here, the exercise of jurisdiction over Defendants easily comports with due process. Defendants were fully aware they were harming and harassing a resident of the state of New York. The Instagram images shared on Pornhub specifically identified Plaintiff as being a New York resident, including referring to him as "@NewYork[Voe.]" What is depicted in the images similarly shows Plaintiff in New York, his employer being in New York, and his family members being in New York. Defendants specifically targeted a resident of New York, and their actions in sharing a New York resident's video and images online should have put them on notice that they risked being haled into court here.

---

[2]      The five (5) factors considered in so determining are: (1) the burden on the defendant, (2) the interests of the forum State, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversies, and (5) the shared interest of several States in furthering fundamental substantive social policies. *See MacDermid, Inv. v. Deither*, 702 F.3d 725 (2nd Cir. 2012).

## V.    PLAINTIFF HAS ASSERTED A CLAIM FOR IIED

Plaintiff has adequately alleged that Defendants committed the acts that constitute IIED.

In Paragraph 20 of the Amended Complaint, Plaintiff alleges:

> Information provided by Pornhub as well as by Charter Spectrum has identified the two parties responsible for recording Plaintiff without his permission or consent; attempting to extort him with the captured videos; and then uploading the content on various online forums when Plaintiff did not pay the amount being demanded: Wayne Yamamoto and Dylan Yamamoto of 94-1053 Haleaina Street Waipahu, HI 96797.

The cause of action for IIED then reiterates Defendants' actions and how their conduct was designed to cause Plaintiff emotional distress, and did, in fact, cause him severe distress.

## VI.    THE COURT SHOULD GRANT PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

Plaintiff filed his Amended Complaint on January 31, 2024.  The amendment largely focused on identifying the Yamamotos as Defendants in this action.  Further amendment is necessary to amplify the previous pleadings and to limit the causes of action currently before the Court.

Pursuant to Fed. R. Civ. P. 15, "[t]he court should freely give leave [to amend] when justice so requires," making sure to interpret the rule liberally in favor of amendment so as to enable disputes to be resolved on the merits whenever possible. *See* Fed. R. Civ. P. 15(a)(2). "Generally, leave to amend pleadings under Fed. R. Civ. P. 15 shall only be denied "if there is delay, bad faith, futility, or prejudice to the non-moving party." *Ramirez v. Cty. of Nassau*, 345 F.R.D. 397, 403 (E.D.N.Y. 2024). Futility is defined by whether "the proposed claim could not withstand a Fed. R. Civ. P 12(b)(6) motion to dismiss" and "it is well-established in the Second Circuit that the burden of proving futility rests on the party opposing the amendment." *Id.*

Finally, delay alone, in the absence of bad faith or prejudice, is not a sufficient reason for denying a motion to amend. *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008).

Here, the amendments do not cause Defendants' any prejudice as they have been aware of the facts from the inception. Rather, the proposed amendments remove the abandoned causes of action, amplify the harm caused by Defendants, and further detail their course of conduct. Finally, the proposed Amended Complaint narrows this action to solely the conduct of the Yamamotos and removes the remaining John Doe defendants.

Given the early stage of this action, the Yamamotos are unable to demonstrate any additional prejudice by the amended pleading should their Motion to Dismiss be denied.

Dated: October 28, 2024

Respectfully submitted,

Daniel S. Szalkiewicz, Esq.
**Daniel Szalkiewicz & Associates, P.C.**
Daniel S. Szalkiewicz, Esq.
Cali P. Madia, Esq.
23 West 73rd Street, Suite 102
New York, New York 10023
(212) 706-1007
daniel@lawdss.com

Attorneys for Plaintiff Victor Voe