# Exhibit 6

Daniel S. Szalkiewicz, Esq. (DS2323)
DANIEL SZALKIEWICZ & ASSOCIATES, P.C.
23 WEST 73RD STREET
SUITE 102
NEW YORK, NEW YORK 10023
*Attorneys for Plaintiff Victor Voe*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **VICTOR VOE,**<br><br>                    Plaintiff,<br><br>– against –<br><br>**JOHN DOES 1–9,**<br><br>                    Defendants. | Civil Action No. 20-cv-5737<br><br>**SECOND AMENDED COMPLAINT** |

Plaintiff Victor Voe ("Plaintiff" or "Voe"), by and through his attorneys, Daniel Szalkiewicz & Associates, P.C., for his Second Amended Complaint against defendants Dylan Yamamoto and Wayne Yamamoto, alleges as follows:

**NATURE OF THE ACTION**

1.    Plaintiff is the victim of an attempted sextortion attempt undertaken by John Does 1-9, individuals now known to be defendants Dylan Yamamoto ("Dylan") and Wayne Yamamoto ("Wayne" and, together with Dylan, the "Defendants").

2.    Defendants engaged in this illicit activity anonymously, inducing Plaintiff to engage in sexual activity which they recorded for the sole purpose of utilizing the video to blackmail him into paying them money to keep the content private. Shortly after apprising him

of their scheme, Defendants told Plaintiff they had also gained access to his computer and were now in possession of unknown quantities of personal and identifying information about Plaintiff.

3.  Unbeknownst to Plaintiff at the time, when Plaintiff refused, the videos were posted on the Web by Defendants, who maintained a sizeable Pornhub account devoted to tricking unsuspecting straight men into masturbating on camera.

4.  Adding to Plaintiff's injuries and trauma, over a period of multiple years Defendants continually monitored and removed content from Plaintiff's social media account as well as his partner's to build an album of images – entitled "Straight guy from video" – which accompanied Plaintiff's video and provided an intrusive look into Plaintiff's private life.

5.  This lawsuit asserts claims for (a) cyber fraud and abuse pursuant to The Computer Fraud and Abuse Act, 18 U.S.C.A. § 1030; (b) fraud; (c) intentional infliction of emotional distress; and (d) unlawful dissemination or publication of an intimate image in violation of New York Civil Rights Law Ch. 5, Sec 52-b.

6.  Plaintiff seeks injunctive relief and damages arising out of Defendants' fraudulent and unauthorized access to explicit sexual videos of Plaintiff that were later posted to several pornographic websites, including, Pornhub, iPornTV, and XVideos.

**PARTIES**

7.  Plaintiff Victor Voe is an adult male who lives and works in this judicial district. In order to protect his identity and to avoid further damage to his reputation and livelihood, Plaintiff is using the pseudonym "Victor Voe" in this Complaint.

8.  Information provided by third parties has enabled Plaintiff to identify John Doe 1 as Wayne Yamamoto of Waipahu, HI and John Doe 2 as Dylan Yamamoto of Waipahu, HI.

9. Defendants engaged in a scheme to fraudulently obtain and gain unauthorized access to Plaintiff's computer and personal images and later post such images on pornographic websites without Plaintiff's consent.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C § 1331, as this is an action pursuant to The Computer Fraud and Abuse Act, 18 U.S.C. § 1030. In addition, upon information and belief, some or all of the Defendants are located outside the State of New York. Therefore, jurisdiction also would be proper under 28 U.S.C. § 1332.

11. The venue in this action is proper within the Eastern District of New York pursuant to 28 U.S.C § 1391(b), in that (i) Plaintiff is a resident of New York; (ii) the claims asserted by Plaintiff arose within this judicial district and (iii) there is no district in which this action may otherwise be brought.Defendants are subject to personal jurisdiction in the State of New York and the federal district court for the Eastern District of New York because they are: (a) engaged in substantial and not isolated activities in New York and this district; (b) committed wrongful and tortious acts within New York and this district; and (c) caused injury to persons located in New York and this district.

## BACKGROUND FACTS

**Plaintiff Meets Defendants Online**

12. In or about 2015, Plaintiff used his personal computer to visit various websites for the purpose of meeting women to engage in anonymous, consensual, virtual sexual encounters. These websites, such as <chatroulette[.]com> and <omegle[.]com>, are online chat websites that are used by consenting adults to engage in webcam-based interactions.

During one of these visits, Plaintiff sought to engage in what he assumed was going to be an online sexual encounter with a female user. To increase his privacy and anonymity, Plaintiff asked the female user to move the encounter from the chatroom website to Skype. Skype is a telecommunications platform specializing in video chat over the Internet.

Plaintiff and the other party agreed that their Skype encounter would be private, anonymous, unrecorded, and unphotographed.

13. During the encounter on Skype, Defendants sent Plaintiff a link to a website that was unknown to Plaintiff which Plaintiff clicked.

14. The sexual encounter occurred as anticipated with Plaintiff engaging in sexual activity on camera with his face shown.

15. At the conclusion of the encounter, Defendants communicated by chat message to Plaintiff that they had recorded him engaging in the sexual acts and that they successfully accessed his computer and knew his true identity and home and work information, among other things. Defendants told Plaintiff that they would publicly release their video if Plaintiff did not pay Defendants a ransom.

16. Upon information and belief, unbeknownst to Plaintiff at the time, the link which Defendants had sent to him contained a virus that was used to gain unauthorized access to Plaintiff's computer and to access Plaintiff's computer files, which, among other things, could be used to learn Plaintiff's real identity and other personal information, such as home address, work information, and banking information.

17. Plaintiff immediately closed Skype, ending the conversation, and deleted all information he could think of that may trace back to him.

18. Plaintiff did not pay Defendants ransom demand and hoped that Defendants were bluffing or, in the alternative, that he had deleted his identifying content before Defendants were able to access it.

19. At the time, Plaintiff was employed in a position of trust whereby the revelation of compromising videos and images of a sexual nature would be damaging to his employment and professional status.

20. For months, Plaintiff waited for Defendants to contact him through his e-mail or phone number to make another ransom demand. With time, Plaintiff began to believe that Defendants were, in fact, bluffing and had not recorded him at all, much less gained access to his computer.

**Plaintiff Learns Defendants Uploaded Intimate Content**

21. Unfortunately, on or about August 24, 2020, Plaintiff was contacted by an unknown third party on Instagram who informed Plaintiff that he had seen Plaintiff's intimate content online.

22.     Plaintiff viewed the link sent to him only to find the video from the encounter described above as well as 49 images Defendants had removed from Plaintiff's and his partner's social media accounts.

23.     Adding insult to injury, Defendants had edited the intimate video they had filmed that evening to now contain an interview of Plaintiff being interviewed at his New York State college.  The interview clip, in tandem with the dozens of photographs pulled from social media, provided a clear look at Plaintiff's face as well as significant insight into his life.

24.     When Plaintiff asked the third party how they were able to link Plaintiff's social media account to the content, the third party indicated that one of the images uploaded by Defendants showed Plaintiff's company name.

25.     The third party indicated being able to locate Plaintiff based on the content using a "Quick google search."

26.     Humiliated, Plaintiff denied being the man depicted.  Privately, he began what would be an uphill battle to identify and remove his intimate content from the internet.

**Defendants' Treasure Trove of Sextortion Materials**

27.     Before long, Plaintiff came to learn that not only had Defendants uploaded his content to Pornhub, but that it had also been uploaded to other popular pornographic sites such as iPornTV and XVideos.

28.     Notably, Plaintiff's content was uploaded in the "gay" sections of the sites even though Plaintiff is not gay and believed he was interacting with a woman at the time the content was captured by Defendants.

29.     Upon information and belief, Defendants did this to embarrass, shame, and punish Plaintiff for refusing to pay the ransom.

30.     Defendants uploaded Plaintiff's intimate content onto Pornhub using the username "JohnBlacki[.]"

31.     Discovery pertaining to Defendants' JohnBlacki account revealed a common theme among uploaded videos: Defendants tricking straight men into masturbating on camera or, in Defendants' words:

- Straight guy thought I was a girl and jacks off;
- Verbal straight muscle guy tricked;
- Verbal Straight Guy Tricked on Omegle;
- Straight Hawaiian Asian Boy Catfished; and
- Straight guy tricked into cumming on cam.

32.     Upon information and belief, men who paid Defendants' ransom demands did not have their videos uploaded online.  Accordingly, the videos Defendants posted on Pornhub do not reflect a totality of the individuals sextorted by Defendants but rather only those who refused to pay Defendants' money demand.

33.     JohnBlacki's intimate video of Plaintiff was accompanied by a 49-image photo album – "Straight guy from video" – built from images Defendants took from Plaintiff's social media accounts as well as social media accounts belonging to Plaintiff's partner.

34.     Defendants uploaded fourteen of Plaintiff's pictures on November 22, 2018: one on January 21, 2019; fifteen on March 10, 2019; two on May 12, 2019; six on December 28, 2019; three on April 15, 2020; and eight on May 27, 2020.

35.     Defendants' uploads were sometimes screenshots of quickly vanishing "stories" demonstrating Defendants' frequent monitoring of Plaintiff and his loved ones' accounts.

**Defendants are Unmasked**

36.     Defendants undertook their harassment of Plaintiff anonymously, posing as a woman then uploading the content as "JohnBlacki[.]"

37. As a result, Plaintiff was initially unable to name Defendants when filing this lawsuit, leading him to sue John Does 1-9 prior to issuing numerous subpoenas.

38. Information provided by Pornhub as well as by Charter Spectrum has identified the two parties responsible for recording Plaintiff without his permission of consent; attempting to extort him with the captured videos; and then uploading the content on various online forums when Plaintiff did not pay the amount being demanded: Wayne Yamamoto and Dylan Yamamoto of 94-1053 Haleaina Street Waipahu, HI 96797.

**Impact on Plaintiff**

39. Plaintiff first learned about Defendants' posting of his private images and videos in August 2020. He immediately contacted the websites on which his images and/or photos appeared and advocated for their removal, however significant damage had already been done.

40. On Pornhub alone Plaintiff's intimate video was viewed more than 20,000 times. Even the benign photographs taken from social media were viewed approximately 1,500 times. Given the proliferation of the content online prior to Plaintiff learning his data had been uploaded, it is likely that his videos have been viewed by hundreds of thousands if not millions of users prior to their removal.

41. Plaintiff immediately took action to "wipe" his digital record, forsensically search his personal databases, and to further harden his cybersecurity defenses against Defendants and possibly others.

42. Plaintiff incurred expenses in excess of $5,000 for these defensive actions.

43. While the logistical burden of Defendants' actions has been expensive and time consuming, the emotional hardship has been far worse.

44. Defendants' invasion of Plaintiff's privacy has been deeply traumatic for Plaintiff, causing him to experience panic attacks, anxiety, and crippling avoidance behaviors.

45. Additionally, Plaintiff now takes extreme precautions to protect his identity online.

46. Plaintiff continues to fear Defendants and what information they possess which would enable them to further harm his life. As it is, Defendants have already demonstrated their ability to determine Plaintiff's identity as well as the identity of his partner.

## COUNT I:
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030

47. Plaintiff hereby realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

48. Defendants wrongfully and intentionally, without authority, accessed a protected computer in order to gain access to files showing Plaintiff's identity. With this information, Defendants attempted to extort money from Plaintiff.

49. These actions were unauthorized because Plaintiff's computer files were stolen and used to extort Plaintiff.

50. As a result of Defendants' unauthorized access, Plaintiff was forced to spend at least $5,000 in order to "wipe" his digital record.

51. The actions of Defendants are in violation of the Computer Fraud and Abuse Act of 1986, 18 U.S.C. § 1030 et. seq. (CFAA).

Pursuant to 18 U.S.C. § 1030(g), Plaintiff is entitled to injunctive relief, in the form of the return of all recorded files, or other equitable relief, as well as compensatory damages.

52. As a direct and proximate result of Defendants' conduct in violation of the CFAA, Plaintiff has suffered and will continue to suffer damages.

53. Upon information and belief, Defendants' conduct will continue unless enjoined by this Court. Accordingly, Plaintiff is without adequate remedy at law and is threatened with irreparable loss, injury, and damage unless the Court grants the equitable relief requested.

## COUNT II:
## FRAUD

54. Plaintiff hereby realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

55. Defendants knowingly and purposefully represented themselves as being a consenting female adult interested in engaging in an anonymous sexual encounter with Plaintiff over Skype. Defendants told Plaintiff that the encounter would remain anonymous, private, unrecorded, and unphotographed.

56. Plaintiff reasonably relied on these misrepresentations and was induced into engaging in a sexual encounter that was in fact recorded and later used to extort, shame, and punish Plaintiff, causing Plaintiff significant harm and emotional distress.

57. Plaintiff demands judgment against Defendants for money damages in an amount to be determined at trial, but not less than one million dollars.

## COUNT III:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

58. Plaintiff hereby realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

59. Defendants recorded Plaintiff's sexual encounter without his knowledge or permission and demanded Plaintiff pay a ransom to maintain the confidentiality of this video.

60. Upon information and belief, Defendants also accessed Plaintiff's personal files with the purpose of obtaining Plaintiff's identifying information.

61. Defendants recorded Plaintiff's sexual activities in order to extort Plaintiff to keep the video private, using his position of employment as leverage.

62. When Plaintiff refused to pay the ransom, Defendants published the images and videos of Plaintiff on several prominent pornographic websites. Defendants' retaliatory actions were made in an effort to humiliate Plaintiff and to punish him personally and professionally as a result of his refusal to pay the ransom.

63. On top of this, over the course of several years Defendants routinely visited Plaintiff's social media accounts as well as those belonging to loved ones for the purposes of gathering more photographs of and information about Plaintiff which they then uploaded onto Pornhub to further harass and alarm Plaintiff.

64. In publishing the images and videos of Plaintiff, Defendants knew, or in the exercise of reasonable behavior should have known, that their actions were intolerable in any civilized society.

65. In publishing the images and videos of Plaintiff, Defendants acted intentionally and with knowledge that their punitive actions would cause severe emotional distress to Plaintiff.

66. Defendants' actions have caused and continue to cause Plaintiff severe emotional distress.

**COUNT IV:**
**UNLAWFUL DISSEMINATION OR PUBLICATION OF AN INTIMATE IMAGE**

67. Plaintiff hereby realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

68. With the intent to harm Plaintiff emotionally and financially, and in violation of New York Civil Rights Law Ch. 5, Sec 52-b, Defendants published images and videos of Plaintiff in retaliation for his refusal to pay the Defendants' ransom demand to keep this wrongfully obtained content confidential.

69. The content in question was sexual in nature and clearly depicted Plaintiff. Defendants' aim was to harass, annoy, and alarm Plaintiff by making very public Plaintiff's private virtual sex life.

70. The images and video disseminated were originally distributed or created by Defendants without the consent of Plaintiff, who had a reasonable expectation that his video chat would remain private.

71. At no time did Plaintiff agree to the recording of the encounter or the dissemination of any such recording.

72. Upon information and belief, Defendants knew of and exploited this expectation in an effort to demand Plaintiff pay for the confidentiality of the sex acts that Defendants improperly recorded and threatened to publish.

**WHEREFORE**, Plaintiff demands judgment against Defendants and each of them, jointly and severally, as follows:

    a. Enjoining Defendants from using, possessing, or disseminating any images or other information of Plaintiff and to return all such material to Plaintiff pursuant to The Computer Fraud and Abuse Act, 28 U.S.C § 2201;

  b.  Awarding plaintiff damages in an amount to be determined at trial, but not less than $1,000,000;

  c.  Punitive damages in the amount of $10,000,000; and

  d.  Such other and further relief as the Court deems equitable, just and proper.

## JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury of all issues triable as of right to a jury.

Dated: New York, New York
    October 23, 2024      Respectfully submitted,

                **Daniel Szalkiewicz & Associates, P.C.**

                */s/ Daniel Szalkiewicz*
                By: Daniel S. Szalkiewicz, Esq.
                   Cali P. Madia, Esq.
                23 West 73rd Street, Suite 102
                New York, NY 10023
                Telephone: (212) 706-1007
                Facsimile: (646) 849-0033
                daniel@lawdss.com
                *Attorneys for Plaintiff*